MARGARITA, GERVASIO y PEDRO GOZÁLEZ ROMÁN; ANTONIA RO-
JAS GONZÁLEZ; ÁNGEL FERMÍN, MARÍA y JOSÉ DÍAZ GONZÁ-
LEZ, demandantes y apelantes-apelados, v. PLAZUELA SUGAR
COMPANY; RAMONA DÍAZ GONZÁLEZ; JUAN, NEPOMUCENO
y MARÍA ROJAS GONZÁLEZ y AMBROSIO GONZÁLEZ ROMÁN, de-
mandados y apelante la primera, y EMILIANO, FRANCISCO,
EUDULIO, ALTAGRACIA, PEDRO, JOSÉ, JOSEFA Y RAMONA GON-
ZÁLEZ ROJAS, demandantes interventores y apelantes. Los
MISMOS v. LOS MISMOS.

Nos. 5116 y 5121.—*Sometidos:* Junio 20, 1930. *Resueltos:* Julio 22, 1931.

702

*E. Martínez Avilés,* abogado de los demandantes; *G. Zeno Sama,* abogado de la demandada Plazuela Sugar Company; *Ulpiano Crespo Jr.,* abogado de los interventores apelantes.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

Un tanto complicada la exposición de estos casos en apelación, y dada la circunstancia de que el juez de distrito en la relación del caso y opinión expresó con gran claridad y totalmente, las alegaciones de unos y otros, es preferible copiar lo que el referido juez escribió allí:

"Margarita González Román y otros establecieron la presente acción sobre negatoria de servidumbre de paso contra Plazuela Sugar Co., Ambrosio González Román y otros.

"Alegan los actores en la demanda que son dueños de una finca de cuatro cuerdas y media, que describen, en el barrio Islote de Arecibo; que la demandada Plazuela Sugar Co. y sin el consentimiento de los demandantes ha tendido sobre la finca ameritada una vía de ferrocarril que la atraviesa de Este a Oeste con el fin de conducir sus cañas de azúcar desde terrenos propios y de sus colonos hasta la factoría que tiene establecida en Barceloneta; que la demandada se ha negado y se niega a levantar dichas vías, así como a indemnizar a los demandantes, y que han sufrido daños y perjuicios que calculan en la suma de cinco mil dólares. Y piden que se declare que la demandada viene obligada a levantar su referida vía y a pagar la indemnización solicitada.

"La demandada Plazuela Sugar Co. formuló excepción previa de falta de causa de acción, pero señalada su vista desistió de esta alegación y pidió permiso para contestar.

"En su contestación, la demandada negó todos y cada uno de los hechos de la demanda, y alegó como defensa: que la finca de cuatro cuerdas y media pertenece exclusivamente a Ambrosio González Román y sus hijos; que en el año 1907, siendo dueños de esa finca Ambrosio González y Josefa Román celebraron con la demandada un contrato de constitución de servidumbre para paso de una vía férrea a través de la finca de referencia siguiendo al efecto una faja o parcela que se describe; que los demandantes no son dueños de la

finca ameritada ni la han poseído durante los últimos 35 años; que la demandada ha estado en posesión y uso constante del derecho de la indicada servidumbre desde que fué tendida dicha vía en 1907, habiendo adquirido en todo caso por prescripción conforme al art. 544 del Código Civil; que si algún derecho tuvieron o pudieron tener los demandantes, su acción está prescrita conforme a los artículos 1836 y 1864 del Código Civil.

"El demandado Ambrosio González Román contestó negando los hechos y alegando en esencia idénticas defensas a las formuladas por la otra demandada, y especialmente que ha poseído esa finca y la posee actualmente en unión de sus hijos como dueño desde hace más de treinta y cinco años, pública, pacíficamente y sin interrupción alguna.

"En este estado el pleito, Emiliano González Rojas y otros solicitaron y obtuvieron permiso para intervenir y radicar demanda alegando: que ellos, en unión del demandado Ambrosio González Román, son dueños de la finca de cuatro cuerdas y media ya citada; que la demandada Plazuela Sugar Co. tendió una vía férrea que atraviesa la finca descrita; que esa vía fué instalada originalmente mediante un simple permiso verbal de Ambrosio González Román sin que la demandada Plazuela Sugar Co. le hubiese pagado ningún dinero u otra consideración para establecerla, ni se fijara tiempo de duración, ni se establecieran otras condiciones conducentes a constituir una servidumbre perpetua de vía; que en 1917 y mediante escritura pública el demandado Ambrosio González Román por sí y como padre con patria potestad sobre sus hijos menores de edad separaron de esa finca una parcela de 1,036 metros, que vendieron, y que es por donde atraviesa la vía férrea y la vendió a la Plazuela Sugar Co.; que la causa del contrato no fué una causa real, pues Plazuela Sugar Co. no entregó a los interventores ni a su padre los cien dólares estipulados; que los interventores no prestaron su consentimiento para ese contrato, pues todos, con excepción de Emiliano y Francisco, eran menores de 21 años y no medió autorización de la Corte para esa enajenación; que el verdadero valor de la parcela es mil treintiséis dólares; que Emiliano y Francisco González formaron ese contrato debido a promesas que les hizo don Agustín Balseiro como director y representante de la Plazuela Sugar Co. de hacer un expediente de dominio de la finca de cuatro y media cuerdas e insribirlo, de intervenir y defender a los interventores en diversos pleitos, obligaciones que no fueron cumplidas por la Plazuela Sugar Co. Y piden que se dicte sentencia declarando que la finca de cuatro cuerdas y media es de la propiedad exclusiva de los interventores

y del demandado González Román, sin que los demandantes originales en este pleito tengan ningún derecho, título o interés sobre la misma; y que los contratos de servidumbre de vía férrea y de venta de la parcela son inexistentes y sin valor.

"Contestaron los demandantes específicamente negando unos hechos y aceptando otros de la demanda de intervención; y la demandada Plazuela Sugar Co. también contestó específicamente, negando unos hechos y aceptando otros y alegando, además, como defensas especiales, las mismas establecidas en su contestación a la demanda original."

En juicio la corte oyó la prueba, y sobre ella estableció sus conclusiones de hecho, a las que aplicó la ley que creyó aplicable; y dictó sentencia por la que declaró sin lugar la demanda, con las costas, declaró sin lugar la demanda de intervención en cuanto a la acción ejercitada por Emiliano, Francisco y Altagracia González Rojas, con costas, y con lugar la moción de intervención en cuanto se refiere a Pedro, José, Josefa y Ramona González Rojas, declarando nula, en cuanto a ellos afecta, la escritura número 81 de 9 de noviembre de 1917 ante el notario Ulpiano Crespo, y esto con costas a los demandados.

Plazuela Sugar Co. apeló en 8 de junio de 1929.

Emiliano, Francisco y Altagracia González Rojas, apelaron en 10 de junio de 1929. Y en el mismo escrito, apelaron también Eudulio González Rojas, en cuanto a sus derechos contra Plazuela Sugar Company, y Pedro, José, Josefa y Ramona González Rojas, en cuanto a ciertos pronunciamientos que hizo la corte en su relación del caso y opinión.

Aparece también otro escrito de apelación de los demandantes, en fecha 10 de junio de 1929.

Plazuela Sugar Company, en su alegato ofrece a nuestra consideración cinco señalamientos de error. El primero de ellos se refiere a la consideración de bien ganancial que se dió por la corte a la finca de cuatro y media cuerdas de que en el caso se trata. El segundo a la declaración de que Plazuela Sugar Company adquirió una servidumbre de vía por

título, apreciando erróneamente la prueba. El tercero, por no haberse estimado la prescripción de veinte años como medio de adquisición de la servidumbre. El cuarto por haber declarado con lugar parcialmente la demanda de intervención. Y el quinto, por la condena en costas.

Argumenta este apelante el primer señalamiento de error sosteniendo que se probó el hecho de que Ambrosio González Román adquirió de su padre la finca de que se trata siendo soltero al tiempo de la adquisición; y si bien después adquirió de nuevo de sus hermanos las participaciones que ellos alegaban tener en la finca, él mismo no recuerda si entonces era casado o soltero; pero lo cierto es que cuando la compró originalmente fué antes de su matrimonio, y era, por tanto, bien privativo. Siendo así, los demandantes-interventores, como herederos de Josefa Rojas no tienen acción.

La corte ha declarado que la finca de cuatro y media cuerdas en el barrio de Islote, era de Pedro González, casado con Francisca Román; y que Pedro González la vendió a su hijo mayor, Ambrosio, en 26 de Enero de 1892; que a la muerte de Pedro, Ambrosio siguió ocupando la finca y explotándola; pero sus hermanos se negaron a reconocer la venta, y reclamaron su participación; que Ambrosio, en evitación de dificultades, adquirió de nuevo de todos sus hermanos; y en la fecha de esta adquisición, estaba casado.

En sus declaraciones ante la corte Ambrosio González, unas veces dijo que al comprar a sus hermanos la participación en la finca de cuatro y media cuerdas estaba casado, y otras veces dijo que no recordaba si era casado o no. En su declaración (folio 38, R. T.) dice que cuando compró a sus hermanos ya estaba casado con Josefa Rojas y lo mismo al folio 40, donde dice que al comprarle al padre era soltero, y al volver a comprar a los hermanos era casado.

La impresión que produce la prueba es de que al hacer Ambrosio González una verdadera compra, era casado. Hay un expediente para acreditar el dominio, en el que se incluye

la finca de cuatro cuerdas y 56 céntimos, que es sin duda alguna, la de que se trata en este caso; y en el escrito inicial se expresó que Ambrosio González Román compró ésa y otra finca, siendo casado con Josefa Rojas (pág. 21 de la Transcripción de evidencia). Luego en otro expediente también para acreditar el dominio, de la misma finca de cuatro cuerdas y media, afirma que adquirió la finca por herencia de su padre Pedro González. Y en la escritura otorgada en 9 de noviembre de 1917, en la que comparece por sí y por sus hijos menores, y en la que también son parte Emiliano y Francisco González Román, afirma que esa finca la adquirió en parte por herencia de su padre, y el resto "estando ya casado con Doña Josefa Román" por compra a sus hermanos y coherederos.

La conclusión a que llega el juez de distrito con respecto a la naturaleza ganancial de la finca, es lógica y correcta. Ni se puede, ni se debe, llegar a otra.

■ La consecuencia de que algunos de los interventores, como herederos de la esposa de Ambrosio, tienen una acción, fundada en ese carácter y en que ellos eran menores cuando su padre otorgó la escritura de 9 de noviembre de 1917, y que la cesión o enajenación de la parte de finca en que ellos eran condueños no es válida y eficaz en cuanto a ellos, porque el padre que los representó, no tenía autorización judicial para tal enajenación, viene tanto de la misma escritura, (páginas 57 a 63 T. E.) como del expediente de dominio promovido por Ambrosio. En la escritura comparece éste por sí; y representando a sus menores hijos Eudulio, Altagracia, Pedro, José, Josefa y Ramona González Román (pág. 58 T. E.) y el compareciente manifiesta que adquirió la finca de cuatro y media cuerdas, en parte por herencia paterna, y en parte, siendo casado con Josefa Román, por compra a sus hermanos; y al otorgar lo hace por sí, y en representación de sus referidos hijos menores. No aparece que la corte tuviera intervención alguna para autorizar tal enajenación.

■■ En cuanto al segundo error, claro es que tiene que aparecer extraño, que quien hizo otorgar una escritura en la que se le dió el pedazo de terreno para que pasara su vía, proteste ahora de que la corte haya dicho o pensado, que habiendo servidumbre en este caso ella ha sido adquirida por título de constitución, y no por prescripción, modo de adquirir que tiene, hecha la adquisición, el carácter de un título en estricto derecho civil, según comprueban las citas que este apelante ofrece.

De que Ambrosio y su esposa constituyeron en 1907 una servidumbre de vía a favor de Plazuela Sugar Company, o que él tuviera el consentimiento de su esposa para tal fin, parece que tuvo la corte algo más que una duda muy seria. En concreto: entendemos que la corte nunca creyó en ese hecho: lo que no es extraño, porque no hay prueba convincente del mismo. Lo que sí creyó la corte es lo que revela el siguiente párrafo de la relación del caso y opinión.

"Años más tarde, en el 1907, Ambrosio González y su esposa Josefa Román convinieron y estipularon con la Plazuela Sugar Co. autorizarla y permitirle cruzar la referida finca con una vía férrea, **mediando precio cierto.**"

¿Ha declarado la corte que en 1907 quedó constituída una servidumbre de paso de vía? Es más: ¿ha creído Plazuela Sugar Company que en 1907 se constituyó la servidumbre de vía?

La corte no declaró constituída la servidumbre en 1907. De la lectura de la opinión, y de la fuerza que en ella se da a la escritura de 1917, se ve que la corte entiende que desde esta última fecha puede hablarse, o discutirse, la constitución de la servidumbre, que es lo que, en el fondo, hay en todo ese contrato escriturario.

Plazuela Sugar Company, no creyó que, en la realidad legal, tenía tal servidumbre, bajo un título o un derecho completo y suficiente; y por eso tuvo que acudir a la escritura, y a procedimiento para obtener el título.

En otros casos en que aparece como parte Plazuela Sugar Company, ha dicho este tribunal algo que conviene recordar ahora.

En el caso *Torres* v. *Plazuela Sugar Company,* 24 D.P.R., 479, se dijo por este tribunal:

" ". . . La corte declaró probado que los demandantes dieron su consentimiento y aunque creemos que la prueba en lo que respecta al consentimiento del principal demandante, el marido, es más bien algo floja, y no satisfactoria para fundar en ella un título, supondremos, sin embargo, con la corte inferior que fué prestado dicho consentimiento. ¿Significaría ese consentimiento que los demandantes habían renunciado para siempre su completo dominio del terreno por el que cruza el ferrocarril? La contestación parece encontrarse en el artículo 446 del Código Civil:

" 'Los actos meramente tolerados y los ejecutados clandestinamente y sin conocimiento del poseedor de una cosa, o con violencia, no afectan a la posesión.' "

En el caso que decidimos, se intentó probar que la esposa de Ambrosio, con éste, había dado el permiso, o el consentimiento, para el paso de la vía. Apenas si hay algo más que la declaración sumamente insegura, y a veces incoherente, del mismo Ambrosio González; y luego en el resto de la prueba, un número de circunstancias, que están en contra de las afirmaciones de Ambrosio. No es raro que el juez no diera importancia a esa prueba, y pasara sobre ella; procedía así con el tacto y la cautela que inspiran a un buen juzgador.

En la decisión de que hablamos, *Torres* v. *Plazuela,* se dice:

"Hay alguna duda respecto a la naturaleza de la servidumbre en este caso. Generalmente una servidumbre de paso es una servidumbre no aparente y discontinua. Si esto es así los apelantes están en lo correcto en alegar que de acuerdo con los artículos 546 y 547 del Código Civil tal derecho sólo puede ser adquirido mediante título escrito. Por el contrario si debido a la colocación de la vía sobre el terreno la servidumbre se convierte en aparente, entonces puede haber gran duda de si es necesario el documento escrito. Scaevola, Tomo X, página 238. De todos modos era necesario para la apelada probar un título de alguna clase. Discutiremos brevemente si el

apelado, dejando a un lado todo principio de *estoppel,* adquirió un título en este caso."

Personalmente el Juez Asociado ponente en este caso, va un poco más allá, y entiende que esta servidumbre de paso de vía tiene, por su uso, el carácter de discontinua siempre. Y en este caso no cabe duda alguna de que su adquisición requiere título escrito. El artículo 539 del Código Civil de Puerto Rico, al definir las clases de servidumbres, dice lo que son las continuas y discontinuas:

"Continuas son aquéllas cuyo uso es o puede ser incesante sin la intervención de ningún hecho del hombre."

"Discontinuas son las que se usan a intervalos más o menos largos y dependen de actos del hombre."

En cuanto una servidumbre se *use a intervalos más o menos largos, y dependa de actos del hombre,* ya no cabe clasificarla más que como discontinua y así con la de vía para paso de un tren que sirve las cosechas de determinado fundo.

La servidumbre discontinua, sea o no aparente, no puede adquirirse más que en virtud de título (Art. 546 Código Civil) y de que el título ha de ser *constitutivo* de la servidumbre, no deja duda alguna la lectura del artículo 547 del Código Civil, así como de que no puede una servidumbre de esa clase adquirirse por prescripción; algo perfectamente lógico, ya que los actos de uso, por no ser constantes, y tener un principio y un fin que se reproducen sin perfecta continuidad, no pueden crear prescripción.

En cuanto al título, tratándose de un gravamen real, nos parece que la ley se refiere a lo que se llama tal en el artículo 50 del Reglamento para ejecución de la Ley Hipotecaria; esto es, al documento público y fehaciente en que funda su derecho la persona a cuyo favor debe hacerse la inscripción. No podemos declarar que el precitado artículo 547 del Código Civil haya querido referirse al título bajo el concepto en que se presenta en el artículo 1853 del mismo Código. En el 547 se habla de un título para *adquirir* la servidumbre. En

el 1853, y en capítulo sobre la prescripción, se habla del *justo título* como el que legalmente baste para *transferir* el dominio o derecho real *de cuya prescripción se trate.*

No se cometió por la corte el error que se señala bajo el número segundo, ni el que aparece bajo el número tercero, ya que no cabe la prescripción, como modo de adquirir una servidumbre de esa naturaleza.

█ En cuanto a la declaración de con lugar la demanda de intervención con respecto a Pedro, José, Josefa y Ramona González Rojas, si éstos eran, como lo son, herederos de su madre, y eran, al tiempo en que se firmó la escritura de 1917, menores de edad, y la enajenación o el gravamen se llevaron a cabo, sin la intervención judicial, y así aparece, la corte no cometió error alguno.

Y en cuanto a la condena en costas, la corte ejercitó sanamente su discreción.

█ También apelan los interventores, y señalan once errores en la sentencia.

Algunos de esos señalamientos se refieren a si hubo o no causa en el contrato de venta que se consignó en la escritura de 9 de noviembre de 1917, y si se pagó, o no, la consideración del mismo, y si se creó, o no, una servidumbre por tal contrato.

En este caso no se está tratando de una acción de nulidad de venta, o de una reivindicatoria. Todo cuanto sobre este extremo se diga, es baldío. La acción es una negatoria de servidumbre: si las partes al discutirla, quieren tratar otra distinta, el tribunal no se encuentra obligado a seguirlas en ese terreno, que no es·el propio de la discusión.

No aparece tampoco que la corte declarara que en 1907 se constituyó la servidumbre de vía férrea. Antes por el contrario, la impresión es la de que la corte ni hizo, ni quiso hacer tal declaración. La corte ha hablado de un convenio o estipulación entre Ambrosio González y su esposa, de una parte, y Plazuela Sugar Co., de otra, para permitir a ésta que,

con sus vías, cruzara la finca; pero no declaró que constituyera la servidumbre, que, con un mero permiso verbal no se constituye. Si en algo convenimos con estos apelantes es en que no hay en los autos prueba de que en ese permiso mediara un *precio cierto*. Y, de su alegato, hacemos nuestra, para los fines de esta decisión, la cita del caso *Albarrán* v. *Paz*, 18 D.P.R. 970, que es según el texto de la opinión, así:

"... Estos actos importantes debieron haberse llevado a efecto por medio de escrituras debidamente otorgadas por las partes, para que tuvieran valor con arreglo a la ley y pudieran ser tomados en consideración por los tribunales en los casos en que se trata de establecer una servidumbre. Por no demostrar el demandante estos hechos debidamente el caso cae por su base. (Código Civil, art. 547.)"

■■ El señalamiento de error número 9, se refiere a que se debió dictar sentencia a favor o en contra del interventor Eudulio González. Se dice que éste a la fecha de la escritura tenía 22 años; que no suscribió la escritura; y que su padre le representó allí sin derecho alguno para ello.

Notamos que en la sentencia no se hace declaración respecto a Eudulio González, quien parece ser o llamarse Julián. Realmente, en una moción que se tituló *nunc pro tunc* se llamó la atención de la corte a ese extremo, entre otros. La corte enmendó algunos particulares, pero no éste.

Se señala como error el haber declarado sin lugar la moción de *nonsuit* presentada por los interventores.

Nos parece que la corte usó bien de su discreción. Es verdad que la prueba de los demandantes era deficiente; pero no tanto que un juez sereno y ecuánime tuviera bastante fundamento para ponerles fuera de la corte. Y, en resumen, nada han perdido los interventores con esa resolución.

En cuanto a que hubiera error al no declarar con lugar en todas sus partes la llamada moción de *nunc pro tunc,* debemos decir que ya se ha señalado el error que hubo. Los

demás particulares se refieren a expresiones de la relación del caso y opinión. No creemos que afecte a derecho esencial alguno de los apelantes la no inclusión de que se quejan, en extremos como los que siguen: constancia de la cantidad de dinero o precio cierto que medió en la transacción: que no existía causa en el contrato, etc. Realmente, es muy difícil saber qué fin procesal pudo llevar esa moción, fuera de la enmienda literal de algún error, y de la inclusión de Eudulio González Rojas.

▆▆▆▆▆ También apelaron los demandantes, que señalan cuatro errores: (a) la declaración por la corte de que la finca de cuatro y media cuerdas es de la propiedad de Ambrosio González y sus hijos; (b) la declaración de que Ambrosio González compró la finca a su padre Pedro González, y luego a sus hermanos; (c) manifiesto error al dirimir el conflicto de evidencia en cuanto a la forma y adquisición del derecho de demandantes y demandados sobre la finca; (d) error al no declarar con lugar la demanda fundando tal declaración en que la servidumbre es discontinua y aparente, y no se puede adquirir más que por título, y el que tiene la demandada no se constituyó por los verdaderos dueños de la finca.

Verdaderamente los tres primeros señalamientos pueden ser tratados de una manera conjunta, y vamos a intentarlo.

Los demandantes no podrían quejarse si la corte hubiera entrado de lleno en la cuestión de propiedad, porque ésa es la que vienen los mismos demandantes proponiendo con todo empeño, y como base para su negatoria de servidumbre.

Hemos visto la prueba que ofrecieron los demandantes, y no es extraño que la corte no le diera crédito alguno. Difícilmente se puede decir menos para aseverar que se es propietario de una finca. La corte no podía creer en esas declaraciones para fundar en ellas resolución alguna.

En lo que toca a que la corte haya hecho declaraciones propias de una acción reivindicatoria, debemos recordar algo ocurrido en el juicio. En la página 9 de la transcripción de

evidencia, aparece lo que sigue con referencia a la prueba de los demandantes:

"Hon. Juez: No se trata de una acción reivindicatoria, sino de una negativa de servidumbre de paso; y la corte hace esta advertencia para evitar que el récord se llene de prueba innecesaria a los efectos de decidir lo que se solicita en las demandas, o sea que Plazuela no tiene derecho a tener una vía de paso por una parte de esa finca.

"Abogado Sr. Martínez Avilés: Si no fuera por la demanda de intervención no haría este interrogatorio. En el fondo casi hay una reivindicación en cuanto a los interventores."

Y de cierto que la prueba que se estaba presentando, si era admisible, tenía mejor lugar en un caso de reivindicación que en uno de negatoria de servidumbre. Y apreciándola rectamente dice el juez de distrito:

"Esta prueba no es suficiente a nuestro juicio para en un pleito de esta naturaleza probar su derecho a la propiedad. Pero aun admitiendo que lo fuera, ella fué impugnada con éxito por la prueba del demandado Ambrosio González Román.

"Los demandantes alegan que son dueños por título de herencia. Es cierto que ellos son coherederos de Pedro González. Pero es la verdad que el título en esa finca pasó al demandado González Román. El compró. Compró primero de su padre. Luego, cuando sus hermanos se negaron a reconocer esa venta, él compró de nuevo a sus hermanos sus respectivas participaciones. Esta es la verdad. La forma en que declaran los testigos de una y otra parte la ponen do relieve.

"La acción para hacer desaparecer la obstrucción de una servidumbre de vía se funda y establece expresamente para proteger y hacer valer un derecho de propiedad, de donde se desprende que si el derecho no es claro o no existe, la acción tiene que fracasar."

En las cuestiones de hecho, la corte estimó la prueba con acierto, y supo dar el debido peso a la evidencia. No encontramos los errores señalados bajo los tres primeros números.

Base del cuarto señalamiento de error es que adquiriéndose, o constituyéndose las servidumbres discontinuas y no aparentes por virtud de título, y no habiendo sido otorgado el que tiene Plazuela por los "reales y verdaderos dueños de

la finca,'' la corte debió declararlo así. Como la prueba no demostró que los dueños de la finca sean los demandantes, el argumento de ese señalamiento de error no tiene fuerza alguna.

▆ En cuanto al llamado Eudulio u Obdulio González, a las páginas 65, 66 y 67 de la transcripción de la evidencia aparecen la aceptación y admisión como prueba, sin oposición alguna, de un acta de nacimiento de Julián González y Rojas, hijo legítimo de Ambrosio González Román y su esposa, nacido, según consta del documento, el 18 de junio de 1895. Este documento se presentó para probar que Julián González Rojas, conocido por Obdulio, tenía 22 años de edad en la fecha en que se firmó la escritura con la Plazuela Sugar Company, o sea, el 9 de noviembre de 1917.

De la referida escritura, que aparece a los folios 57 a 63 de la transcripción de evidencia, resulta que Ambrosio González Román compareció en ella y otorgó, como padre con patria potestad sobre sus menores hijos Obdulio, Altagracia, Pedro, José, Josefa y Ramona González Román, sin que aparezca que tuviera poder alguno de Obdulio o Julián para el otorgamiento de tal escritura.

Siendo esto así, *la sentencia debe modificarse en el sentido de declarar con lugar la demanda de intervención en cuanto a Julián González, a más de los en ella comprendidos, y nula en cuanto al mismo afecte la escritura No. 81 de 9 de noviembre de 1917 a que se refiere la opinión y sentencia, otorgada ante el notario Ulpiano Crespo, Jr., confirmándose la misma sentencia en todos los demás extremos.*