INOCENCIA PICÓN RIVERA, demandante y apelante, *v.* CENTRAL CAMBALACHE, INC., demandada y apelada.

No. 6572.—*Sometido:* Marzo 19, 1935. *Resuelto:* Mayo 20, 1935.

*Isaías M. Crespo*, abogado de la apelante; *Félix Santoni*, abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Ejercitando la acción negatoria de servidumbre, alegó, substancialmente, la demandante en su demanda que es dueña de una finca de una cuerda de terreno situada en el barrio de Sabana Hoyos del término municipal de Arecibo, que adquirió por herencia desde hace más de treinta años, y que la demandada, una corporación que se dedica en Arecibo a la molienda de cañas, es dueña de una vía férrea parte de la cual tiene instalada sobre la finca de la demandante sin su consentimiento y causándole perjuicios. Y alega además que ha requerido a la demandada para que levante la vía y se ha negado, motivo por el cual acude a la corte en solicitud de una sentencia que ordene de remoción de la vía, con costas.

Contestó la demandada negando que la vía se instalara sin autorización y alegando en contrario que lo fué con el consentimiento de la demandante y de Santiago Picón hace más

de veinte años. Negó que causara daño y que fuera requerida para el levantamiento de la vía.

Como defensas alegó, en resumen, las que siguen:

La demandante y Santiago Picón constituyeron una servidumbre de paso a perpetuidad a favor de la demandada para la instalación de la vía sobre la finca que poseían en común y que al dividirse la comunidad la demandante conocía personalmente la existencia de la vía que es aparente desde hace más de veinte años, estando impedida de impugnar la servidumbre y la vía.

Cualquiera que sea el derecho que la demandante tenga o hubiera tenido sobre las tierras en que está situada la vía, la demandada ha adquirido la servidumbre por prescripción, de acuerdo con el artículo 544 del Código Civil, por haberla poseído por más de veinte años.

Antes de construirse la vía los terrenos de esa zona tenían escaso valor. Su precio aumentó por razón de la construcción que fué hecha por la demandada de buena fe, invirtiendo considerables sumas de dinero, "en provecho de los terrenos de la demandante que pudieron extender su área y variedad de cultivo."

Fué el pleito a juicio. Con respecto a que la demandante es dueña de la cuerda de terreno que atraviesa la vía, a la existencia de ésta en forma ostensible y al cruce por ella de los trenes de la demandada transportando caña y leña, no hay cuestión. La cuestión surge con respecto a si se constituyó o no una verdadera servidumbre de paso y por consiguiente si la vía fué y continúa o no legalmente instalada sobre las tierras de la demandante y a si ésta, bajo las circunstancias que concurren, está o no impedida en todo caso de negar la servidumbre. Para resolverla es necesario analizar y pesar la evidencia practicada.

El primer testigo que declaró fué la propia demandante Inocencia Picón. Tenía a la fecha del juicio más de sesenta años. Se crió en la finca. Allí murieron sus padres y allí

siguió viviendo y vive aún. La vía ocupa como un cuadro de terreno y está allí como desde hace veinte o veinte y dos años. Dió permiso a don Remigio Badía que estaba con don Manolo Paz para que, por cuatro años, pasaran los trenes. Le pagaron veinte y cinco pesos por las plantas que le destruyeron. Nada más ha recibido. Por la vía no ha cobrado ni un centavo.

Fué repreguntado insistentemente por los abogados de la demandada y siempre sostuvo que lo que concedió fué un permiso por cuatro años. Conoce que Paz era un notario. No sabe firmar. Primero dijo que no recordaba si se hizo algún documento. Luego reconoció que autorizó a Remigio Martínez para firmar y seguidamente aclara: "Para el pago del dinero." . . . "Nada más que un papelito para el dinero que me dieron, los veinte y cinco pesos por las matas."

Cuando se le repregunta cómo esperó tanto tiempo para reclamar, contesta: "Porque ahora veo que más lo necesito y ahora lo pido."

Y al repreguntársele "¿Y a pesar de lo que dice, recuerde bien, usted no autorizó una servidumbre a perpetuidad? Mire que es usted una anciana y los juramentos tienen fuerza", responde: "Ante los ojos de Dios, es la justicia. Nada de mentira puedo hablar."

Seguidamente fué llamado a declarar Santiago Picón, hermano de la demandante. De su testimonio se desprende que al morir sus padres dejaron algún terreno tocándole a cada hijo una cuerda. Sólo la demandante conserva la suya que es por donde pasa la vía. Sostiene que él vendió su parte antes de instalarse la vía. Estuvo presente el día que Remigio Martínez Badía y Manuel Paz hablaron con la demandante. "Sé que hicieron un papel, no sé de documentos. . . Veinte y cinco pesos le dieron a ella. . . . Porque había frutos menores sembrados en la vía, guineos, palos de chinas, aguacates . . . palmas de yaguas, palmas de cogollo . . . calculo que podrían valer muy bien los veinte y cinco pesos."

Del contrainterrogatorio transcribimos:

"P.—¿Cuando se firmaron los papeles esos que estaba el Notario Paz Urdaz, estaba su hermana y Ud. por qué fué que intervino en el contrato ese? ¿No había dejado de ser dueño de la cuerda?—Lo que pasó, que como vivía con ella y estoy al cuidado de ella, yo firmé por ella.—P.—¿Sabe firmar? No, señor; pero firmó otro por mí. —P.—¿A quién autorizó, a don Remigio Martínez?—Sí, señor.—P. —¿Autorizó a Remigio Martínez en el documento ese en relación con la vía que se estableció?—Sí, señor.—P.—¿Doña Inocencia estaba?— Si, señor.—P.—¿Doña Inocencia firmó?—No recuerdo si firmó.—P.— ¿Ella sabe firmar?—Ella no sabe firmar.—P.—¿Quien firmó por ella?—No recuerdo quién firmó por ella.—P.—¿No estaba don Remigio Martínez?—Sí, señor."

Pedro Torres, vecino de la demandante desde 1892, describe su finca y la vía que la atraviesa.

Emilio Vega, también antiguo vecino del barrio se refiere a la finca y a la vía y dijo que "Remigio Martínez Badía llegó a donde ella (la demandante) llegó a donde todo el mundo a pedir paso para la vía y creo seguro que se lo dió." Con respecto a por cuánto tiempo, no sabe. No estaba presente. Contestando la pregunta "¿Le pagaron algo?", dijo: "Don Remigio le prometió veinte y cinco pesos por unos árboles que le quitaban para tender la vía."

Fué entonces llamado a declarar Remigio Martínez Badía que contestó en resumen que para el 1910 estaba empleado por la demandada en la construcción de la vía. Conoce la finca de la demandante. Inocencia Picón no quería dar el paso. Le aconsejó que lo diera porque le convenía a ella y al barrio. Le parece que lo dió. "Yo no sé si se hizo algún documento o no con seguridad. No lo sé, sé que estuvo Paz Urdaz por allí, pero con seguridad no puedo decir si se levantó documento. . . . Se le pagó dinero por la destrucción de unas plantas que se le dañaron."

Al comenzar las repreguntas se inquirió otra vez del testigo si se había firmado algún documento y contestó: "Como seguro no lo sé." Entonces el abogado de la demandada le

dijo: "¿Y este documento que le presento?. . . ." Intervino el abogado de la demandante pidiendo que se le permitiera examinar el documento antes de que continuara el contrainterrogatorio. No accedió la corte. Y el abogado de la demandada prosiguió:

"P.—Mire ese documento. Esta firma.—Esta firma es mía.—P.—¿Qué dice la firma?—Como testigo y a ruego de Inocencia Picón Rivera, R. M. Badía.—P.—¿Firmó ese documento a ruego de Inocencia Picón y de Santiago Picón?—Sí, señor.—P.—¿Y la firma es?—La mía. —P.—¿De modo que Ud. también autorizado por Inocencia Picón firmó ese documento?—Sí, señor.—P.—¿A ruego de ella?—Sí, señor. —P.—¿Y estaba allí presente el notario?—Manuel Paz Urdaz.—P.—¿Qué expresa ese documento, servidumbre de paso por algún tiempo o a perpetuidad?—Aquí dice a perpetuidad.—P.—¿Y era para colocar qué?—Para colocar vías de ferrocarril.—P.—¿De modo que ahora recuerda haber sido autorizado para firmar ese documento?—Lo recuerdo, pero he firmado tantos; pero ahí está claro."

Contestando el testigo a preguntas del juez dijo que la cuerda de terreno se vendía en aquel sitio el año 1910 a doce o quince pesos, que la vía sobre la finca de que se trata tenía alrededor de setenta metros de largo y treinta y seis pulgadas de ancho la vía propia y el terreno a ella destinado unos cuatro metros.

Vitaliano García fué el último testigo presentado por la demandante. Es Tesorero y Tenedor de Libros de la demandada. Fué preguntado y contestó así:

"P.—¿Como tal Tesorero y Contable de la Central Cambalache, tiene a su cargo los libros donde lleva la contabilidad a la Central? —Sí, señor.—P.—Quiere mostrarme el libro Diario en su folio 325? —. . .—Aquí está.—. . .—P.—¿Corresponde a qué año?—A 1910. —P.—Busque la cuenta de esa página relacionada con el nombre de Inocencia Picón.—Vía férrea.—P.—¿Qué dice ahí?—Indemnizaciones pagadas a las siguientes personas por plantaciones destruídas para facilitar el paso para nuestra vía de Sàbana Hoyos, a saber: Inocencia Picón, según recibo, treinta pesos; a Jacinto Ayende . . . . —. . .—P.—¿Ahora busque el libro mayor en el folio 325.—¿Qué tiene en sus manos?—El libro mayor.—. . .—P.—¿Mire a ver si ahí, en ese folio, hay algún asiento relacionado con Inocencia Picón?—

—Hay un asiento que dice: Indemnizaciones pagadas por plantaciones destruídas a varios para facilitar paso para nuestra vía, según diario.''

La prueba de la demandada comenzó con la presentación del documento identificado que la corte admitió con la oposición de la demandante. Dicho documento se remitió original a esta Corte Suprema. Es una forma preparada en maquinilla dejando huecos para ser llenados luego. Dice:

''Yo, Inocencia y Santiago Picón Rivera, mayores de edad, vecinos de Arecibo dueños de una finca rústica radicada en el barrio de Sabana Hoyos término de Arecibo, compuesta de dos cuerdas de terreno, colindante al Norte con Juan Bautista Candelaria, y Gregorio Serrano, Poniente José Santiago, Sur José Santiago y Este Gregorio Ruiz.

''Por el presente, CONSTITUYO SERVIDUMBRE DE PASO a perpetuidad, por la finca que se ha descrito, a favor de la Corporación de este domicilio 'CENTRAL CAMBALACHE', incorporada y existente con arreglo a las leyes de Puerto Rico; y en consecuencia, queda facultada la expresada Central para atravesar por dicha finca, de_____con un camino de seis a diez varas de ancho, para una vía de ferrocarril, fijando, de una manera definitiva, los railes para el paso de los trenes; cuya servidumbre gratuitamente constituyo, mediante el precio de_____que me ha sido pagado en su totalidad por la citada Corporación, antes de este acto, dándole carta de pago.

''En prueba de ello, queda extendido y firmado este documento, en Arecibo, barrio de Sabana Hoyos a primero de abril de 1910.

· ''Como testigo y a ruego de Inocencia y Santiago Picón Ribera.

R. M. Badía.

''Número 111.

''Suscrito y jurado ante mí hoy primero de abril de 1910 por Inocencia y Santiago Picón Rivera, de las generales que han expresado, a quienes conozco personalmente.

Manuel Paz Urdaz,
Notario Público.

(Hay un sello Notarial pero no el sello de rentas internas.''

La palabra ''gratuitamente'' aparece manuscrita entre líneas y por sobre las palabras ''mediante el precio de———que me ha sido pagado en su totalidad por la citada cor-

poración, antes de este acto, dándole carta de pago", se trazó una línea con tinta.

Acto seguida declaró Andrés Ruiz. Dijo que la finca de la demandante tenía antes dos cuerdas. Hoy tiene una. Está cruzada por el medio, de una parte a otra, por la vía.

Luego compareció Cesáreo García, empleado de la demandada. Dijo que la finca "tenía dos cuerdas de terreno cuando se constituyó la servidumbre." Era de Inocencia y de Santiago Picón. Quedó reducida a una que es de Inocencia. La atraviesa una vía férrea de la demandada a virtud "de una servidumbre que otorgaron Santiago e Inocencia Picón."

Ha hablado en distintas ocasiones con la demandante, "una de ellas personalmente, que fuí a invitarla a venir a firmar una escritura de servidumbre, porque lo que tenía antes firmado era un *affidavit* y queríamos que se hiciera la escritura debidamente para inscribirla en el registro e Inocencia Picón me contestó, que para qué quería más servidumbre que tener la vía tendida por la finca; que había otorgado esa servidumbre y ella tenía palabra y ella no hacía más escrituras. En otra ocasión también en que tuve conocimiento de que ella trataba, o decían que trataba de vender el terreno, la cuerda, donde tenía su casita, y entonces se le invitó a ver si quería permutar esa cuerda de terreno por otra cantidad igual de terreno al lado de la carretera que va de Sabana Hoyos a San Juan, en la que hay una casa de madera bastante grande, algo mejor que la que tiene su finca actualmente, y contestó lo mismo que ella no quería permutar terreno y que no tuviéramos cuidado alguno que ella había otorgado la servidumbre de la vía y que la vía pasaba por su finca y no hacía más ni quería permutar ningún terreno, que quería morir donde había vivido casi siempre."

Que la vía se construyó desde 1910 con dinero de la Central, es permanente y visible. Ocupa unos ochenta metros de largo por cuatro y medio de ancho. El costo de la vía por kilómetro es como diez mil cuatrocientos dólares.

A repreguntas del abogado de la demandante, contestó que sabe que la finca tenía dos cuerdas:

"Porque está en un documento y manifestaciones que no una sola vez, sino en distintas veces que personalmente he ido con Manuel Paz Urdaz a solicitar que nos firmaran la escritura, que antes he referido eso, que distintas veces han dicho las mismas colindancias de la finca. —P.—¿Entonces esa escritura que Ud. dice que solicitaba, eso era conjuntamente con Paz Urdaz el notario?—Eso hace mucho tiempo ya.—P.—¿Sabe que murió Paz Urdaz?—Sí, señor.—P.—¿Y hace más de doce a quince años que ha muerto?—Sí, señor; fué al poco tiempo con objeto de inscribir la servidumbre, no una sola vez sino varias veces y doña Inocencia contestaba que decía las cosas una vez nada más y para qué querían la escritura si estaban las vías sobre el terreno. Era la contestación que decía.—P.—¿Le ofreció permutar la finca por otra?—Sí, señor; últimamente.—P.—¿Cuándo fué eso?— Eso hará como dos años. Una cosa así.—P.—¿Más o menos?—Sí, señor.—P.—¿Y ella no la quiso permutar?—No, señor; ella siempre dijo entonces que ella vivía tantos años ahí en esa finca y ella no quería salir de allí y allí moriría."

Emilio Canals manifestó haber construído en su totalidad la vía férrea de que es parte la de que se trata de este pleito. Que Inocencia y Santiago Picón constituyeron servidumbre a favor de la Central Cambalache. Que la vía es fija, de treinta pulgadas de ancho y traviesas de hierro y costó de ocho a diez mil dólares por kilómetro. Su construcción se hizo de abril a octubre de 1910. Pedían permiso a los propietarios. Los permisos se obtuvieron antes de empezar la construcción.

Fué llamado de nuevo Cesáreo García y con él terminó la prueba de la demandada. Dijo que los trenes comenzaron a funcionar desde 1910 por la finca de Inocencia Picón. "Desde abril. Ya en el mes de abril pasaban las locomotoras por aquellos terrenos."

Como prueba de *rebuttal* llamó la demandante a declarar nuevamente a su testigo Emilio Vega quien dijo que transcurrieron dos o tres meses en colocarse la vía después del permiso concedido por la demandante, y a Juan Ayende que

manifestó que él concedió permiso para pasar la vía sobre sus terrenos el mismo día que concedió el suyo la demandante y que las obras para la vía en su finca tardaron tres meses. Repreguntado contestó que la finca de la demandante queda más cerca de la factoría que la de él y que la vía podía llegar a la finca de la demandante sin llegar a la de él.

Así terminó la práctica de la evidencia en este caso que fué apreciada por la corte sentenciadora como demostrativa de que:

". . . . en primero de abril de 1910, los hemanos Picón Rivera otorgaron ante el notario Manuel Paz Urdaz un documento por virtud del cual, siendo dueños de una parcela de dos cuerdas de tierra, radicada en el barrio Sabana-Hoyos de Arecibo, constituyeron servidumbre de paso a perpetuidad sobre su finca a favor de la corporación Central Cambalache Inc. para que dicha entidad tendiese sobre el fundo sirviente una vía de ferrocarril y fijase, de una manera definitiva, los rieles para el paso de los trenes.

". . . . la demandada, Central Cambalache Inc., pagó a los hermanos Picón Rivera la suma de treinta dólares como compensación.

". . . . a virtud del documento otorgádole por los hermanos Picón Rivera, la demandada construyó y tendió las vías de un ferrocarril, en el año 1910, para el transporte de cañas y otros productos, cruzando la parcela de dichos señores.

". . . . con posterioridad a la concesión de la servidumbre, los hermanos Picón Rivera dividieron la comunidad existente entre ellos, correspondiendo· a cada cual una cuerda, Santiago segregó y vendió la suya, quedando la cuerda perteneciente a Inocencia.

". . . . las tierras del barrio Sabana-Hoyos cruzadas por los rieles de la demandada, tenían en el año 1910 un valor de doce a quince dólares la cuerda.

". . . . el coste aproximado de cada kilómetro de rieles tendido es de ocho a diez mil dólares y, dentro de los seis meses de obtenida la servidumbre, la demandada construyó nueve kilómetros de vía por aquellos sitios.

"No hay duda de que los hermanos Inocencia y Santiago Picón Rivera otorgaron en primero de abril de 1910 un documento, reconocido ante notario, concediendo a Central Cambalache Inc. derecho de paso a perpetuidad sobre su finca. Si bien de dicho documento aparece que la concesión fué gratuita, sin embargo, en el curso de

la prueba se demostró que la demandada les satisfizo treinta dólares como remuneración.''

Y basándose dicha corte en esas conclusiones, hecho un estudio de la ley y la jurisprudencia que consideró aplicables y estimando ''que el documento aportado en evidencia por la demandada es uno válido y eficaz en derecho para adquirir la servidumbre debatida en este pleito'', dictó sentencia declarando la demanda sin lugar, sin especial condenación de costas.

No conforme la demandante apeló. Sostiene que la corte sentenciadora erró al admitir como prueba el documento de abril 1, 1910, al permitir prueba sobre los recursos invertidos por la demandada en la construcción de la vía y al apreciar la prueba.

No nos detendremos en el estudio y resolución de los dos primeros señalamientos.

Aceptando sin resolverlo que eran admisibles en evidencia el documento de que se trata y los testimonios sobre inversión de fondos en la obra general de construcción del ferrocarril, nos detendremos en el peso de la prueba o sea en las cuestiones que surgen a virtud del tercer señalamiento.

■ En primer lugar descartaremos la cuestión de prescripción como medio de adquirir la servidumbre, ya que esta corte ha resuelto que la que en este pleito está envuelta es de paso que si bien es aparente no tiene el carácter de continua y por tanto sólo puede adquirirse a virtud de título. Artículo 475 del Código Civil, ed. 1930; *Martínez* v. *Central Cambalache,* 48 D.P.R. 216; *González* v. *Plazuela Sugar Co.,* 42 D.P.R. 701.

■ ¿Constituye título válido de adquisición el documento presentado por la demandada? Tras un estudio cuidadoso del mismo y de todas las circunstancias que pone de manifiesto la evidencia practicada, entendemos que no.

En la apreciación de la prueba no se advierte pasión, prejuicio o parcialidad, pero sí error manifiesto cometido por la

corte inducida tal vez por el escaso valor del terreno y lo tardío de la reclamación.

Examinemos el documento en sí mismo. El Notario Manuel Paz Urdaz consigna que fué ''suscrito y jurado'' ante él ''por Inocencia y Santiago Picón Rivera''. Sabemos cómo aparece suscrito: ''Como testigo y a ruego de Inocencia y Santiago Picón Rivera. R. M. Badía.'' No se expresa la necesidad de la intervención de Badía. Es en el juicio que nos enteramos de que Inocencia y Santiago no saben escribir. No consta la marca de las personas por quienes firma Badía. No aparece que el documento que se llevaba ya redactado por los agentes de la demandada fuera leído a la demandante antes de ser suscrito. Declaró Badía y no fué repreguntado sobre ese extremo ni sobre otros que hubieran podido aclarar la transacción.

El documento dice que la constitución de la servidumbre fué gratuita. Eso no obstante el juez sentenciador concluye que la demandada pagó a la demandante treinta dólares como remuneración. La conclusión de la corte no sólo es contraria a los términos del documento, si que a lo repetidamente dicho por los testigos de la demandante y a los asientos contemporáneos hechos por la propia demandada en sus libros de contabilidad. Lo pagado fué exclusivamente por las siembras existentes en las tierras separadas para la vía, no por la servidumbre.

Y la conclusión tiene gran importancia porque siendo la concesión gratuita, constituye una donación de cosa inmueble que para su validez requiere la escritura pública, y no creemos que pueda ni siquiera insinuarse que el documento en cuestión sea la escritura pública exigida por el artículo 575 del Código Civil, ed. 1930.

La declaración de la demandante dice mucho a la conciencia del juzgador. También la de su hermano y la de Badía. La propia prueba de la demandada resulta en muchos puntos contraria a sus propósitos. Por ejemplo la declara-

ción de su testigo García pone de manifiesto la clara noción que la propia demandada tenía de la debilidad de su título y su empeño en probar la prescripción innecesaria en absoluto si el título bastaba. Recordemos en cuanto a lo primero la insistencia de la demandada en obtener de la demandante una verdadera escritura pública, llegando hasta ofrecerle la permuta de su finca por otra al parecer mejor. Y pensemos en cuanto a lo segundo en la última declaración del testigo prestada después que el abogado de la demandante expresó su intención de probar que no habían transcurrido los veinte años que serían necesarios en el caso de que la servidumbre pudiera adquirirse por prescripción. El testigo llega entonces hasta a afirmar que los trenes pasaban por sobre la vía construída en los terrenos de la demandante no ya desde junio, sino desde abril de 1910.

Quizá no sea cierto que al conceder el permiso la demandante fijara el término de cuatro años, pero que tampoco lo es que constituyera conscientemente una servidumbre a perpetuidad, surge evidente de la prueba. Lo concedido fué sin duda un permiso indeterminado y por tanto insuficiente para la constitución definitiva de una servidumbre.

Sólo a sí misma puede culparse la demandada que teniendo todos los medios a su alcance, por economizar quizá una pequeña suma de dinero, obtuvo una concesión informal en vez de un derecho claro, definitivo.

Para evitar en el futuro situaciones como ésta es que la ley exige que el gravamen se constituya de modo tal que su extensión no pueda luego discutirse.

En cuanto a que de acuerdo con la jurisprudencia que se invoca la demandante dados el tiempo transcurrido y su actitud al permitir la construcción de la vía a un costo considerable, esté por lo menos impedida de actuar, bastará decir que el caso se rige por los preceptos del Código Civil y que sus verdaderas circunstancias tampoco lo llevan al terreno en que pretende situarlo la demandada.

El ferrocarril de la demandada no es público, sino privado. La demandante no era una propietaria de una gran extensión de tierras que pudiera beneficiarse con el más fácil transporte de su producto sembrándolas de cañas, sino la dueña de una sola cuerda que quedó dividida y mermada por la vía que no era susceptible de usarse por ella para viajar personalmente ni para transportar los productos obtenidos en su finca, frutos menores. El tiempo transcurrido se explica por la misma condición de ignorancia y de pobreza de la demandante.

Nunca serán condenados suficientemente los litigios que se inicien de mala fe, reclamando derechos que fueron concedidos, basándose en omisiones involuntarias o debidas a la confianza existente entre las partes, o en meros tecnicismos. Esos pleitos constituyen verdaderos fraudes que no deben recibir el amparo de las cortes. Tras honda meditación no podemos concluir que éste sea uno de esos casos. No hay duda que alguien con conocimientos legales debió abrir los ojos a la demandante. Pero si ésta los abrió para cerciorarse de que no se había sido justo con ella, de que su derecho a su tierra libre de cargas subsistía, entonces los tribunales deben amparar su reclamación y hacer que sea efectiva. Las transacciones entre los hombres deben ser claras y justas desde un principio. No debe permitirse que se tomen ventajas indebidas. Y la ley debe cumplirse.

Aquí la ley dispone que sólo puede adquirirse la servidumbre de que ha venido disfrutando la demandada, a virtud de título constante en escritura pública. La demandada no ha probado la existencia de ese título y la prueba toda, analizada en conjunto, demuestra más bien la existencia de un permiso indefinido que la de un derecho permanente, definitivo.

De acuerdo, pues, con los hechos y la ley, cabe la acción negatoria de servidumbre ejercitada y *debe dictarse sentencia declarando que la finca está libre del gravamen, ordenándose*

*el levantamiento de la vía dentro del término de seis meses contado a partir del registro de la sentencia de esta corte en los libros de la Corte de Distrito de Arecibo, con las costas.*

Los Jueces Asociados Señores Hutchison y Córdova Dávila no están conformes con la calificación de discontinua que se da en la opinión a la servidumbre de vía férrea que es a su juicio continua tal como se expresa en la opinión disidente del Juez Asociado Sr. Córdova con la cual está conforme el Juez Asociado Sr. Hutchison en el caso de *Martínez* v. *Central Cambalache,* ante, pág. 222.