Vélez Gaztambide et al., Demandantes y Apelantes, *v.* Guánica Centrale, Demandada y Apelada, y Sucesores de Bianchi, Interventores y Apelados.

Apelación procedente de la Corte de Distrito de Mayagüez en una acción negatoria de servidumbre.

No. 1843.—Resuelto en diciembre 20, 1918.

Servidumbre de Paso—Acción Negatoria—Estoppel.—En el presente caso el demandante consintió una servidumbre de paso por su heredad, a cambio de ciertas concesiones de las cuales se aprovechó. Después de más de diez años de haber la persona a quien se concedió el derecho realizado obras de carácter permanente en relación con el ejercicio del mismo, el demandante entabló esta acción negatoria de servidumbre. *Se resolvió:* Que era aplicable la doctrina de *estoppel* y por lo tanto que dicho demandante estaba impedido de ejercitar la dicha acción.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. G. Casta Fornés.*

Abogado de la demandada-apelada: *Sr. F. Manuel Toro.*

Abogado de los interventores y apelados: *Sr. Cayetano Coll Cuchí.*

El Juez Asociado Sr. del Toro, emitió la opinión del tribunal.

José Ramón Vélez Gaztambide y su esposa entablaron en la Corte de Distrito de Mayagüez una demanda contra Guánica Centrale, sobre acción negatoria de servidumbre. La demandada contestó negando todas y cada una de las alegaciones de la demanda. Y con permiso de la corte intervi-

nieron en el pleito Sucesores de Bianchi, sociedad civil realmente interesada en el litigio. Se celebró la vista, y la corte, por el resultado de las alegaciones y las pruebas, dictó sentencia declarando la demanda sin lugar. Contra esa sentencia interpusieron los demandantes el presente recurso de apelación, con el cual se ha tramitado conjuntamente otro recurso interpuesto por los mismos demandantes contra la resolución final de la corte de distrito relativa al pago de las costas y honorarios de abogados.

Los demandantes basaron su demanda en que son dueños de dos fincas rústicas que describen, situadas en los barrios de Cidra y Espino del término municipal de Añasco; en que la demandada, una corporación dedicada a la elaboración de azúcar de caña, pasa por dentro de las fincas de los demandantes un ferrocarril y tiene construído sobre el río "Humetas" un puente cuyos estribos se levantan sobre tierras de los demandantes, impidiendo de tal modo a los demandantes el pleno disfrute de sus bienes. El hecho VI de la demanda, copiado a la letra dice así:

"Que los demandantes no han otorgado título alguno de servidumbre a favor de la sociedad demandada, ni de ninguno de los predios confinantes con sus fincas, ni de heredad alguna enclavada entre éstas, no habiendo jamás consentido en el establecimiento o continuación de presunta servidumbre, ni obtenido cantidad alguna de la demandada ni de ninguna otra persona natural o jurídica por concepto de indemnización, ni renunciado en forma alguna al completo dominio de sus tierras que cruza el mencionado ferrocarril."

La demandada, Guánica Centrale, es arrendataria de Sucesores de Bianchi. Estos alegaron que son los actuales dueños del ferrocarril de Añasco a Altosano que pasa en efecto por las fincas de los demandantes y que tanto para la construcción de la vía como para la del puente de que se ha hecho mérito se solicitó y obtuvo el consentimiento de los demandantes.

La prueba demostró que el ferrocarril de Añasco a Altosano estaba construído desde antes del ciclón de San Ciriaco;

que por virtud de dicho ciclón un puente que existía sobre el
río Humetas fué destruído; que al tratar de reconstruirlo
el ingeniero Skerret opinó que debía levantarse en otro sitio;
que así se acordó y como el nuevo sitio requería la ocupa-
ción de terrenos del demandante José Ramón Vélez Gaztam-
bide, Sucesores de Bianchi solicitaron y obtuvieron su con-
sentimiento para ello.

Sobre la forma en que se prestó el consentimiento la
prueba no está del todo conforme. El propio demandante
José Ramón Gaztambide declaró "que los señores Bianchi
le pidieron permiso para que tolerare poner por allí la vía,
que no le explicó el tiempo por el que les dejó pasar la vía;
que fué una mera tolerancia de él; que no hubo contrato
entre ellos, ni él les prometió otorgarles escritura de servi-
dumbre, ni de venta, ni de nada; * * *." Luego, sujeto
a un largo interrogatorio por el abogado de la parte deman-
dada, termina por declarar: "que él concedió el estableci-
miento de esa vía a condición de que le garantizaran, de que
le concedieran pasar un loril para su familia, de traer mer-
cancías hasta su casa, pero una vez que la Guánica compró
* * *; que le concedieron un vagón; que por ese motivo
fué que dió el permiso para que se pusiera el puente, pero no
le conviene; no le han cumplido el contrato; que no le han
cumplido las condiciones por las cuales cedió ese paso; que
estableció su acción porque las condiciones para el paso a la
vía no se las habían cumplido." Y si del examen de esa de-
claración del demandante pasamos a la del testigo Enrique
Green de la parte demandada, encontraremos que dicho testigo
describe el contrato celebrado así: "que hubo una súplica de
Sucesores de Bianchi a don José Ramón Vélez para que le de-
jara poner el ferrocarril y existió el acuerdo, en el escritorio de
Bianchi, donde se acordó todo: 'vas a usar un loril que lo
vas a tener a tu disposición de día y de noche, a todas horas,
y además vas a disponer de ese ferrocarril sin cobrársete
arrastre ninguno;' que cuando Sucesores de Bianchi arren-
daron a la Guánica Centrale, fué condición de aquel contrato

que ellos vendrían obligados a respetar lo que habían acordado Sucesores de Bianchi; que él tiene entendido que ellos han usado el loril, pero que después él se fué a vivir a Mayagüez y no tiene la seguridad si la Guánica Centrale ha respetado o no; * * *.'' F. Manuel Toro, abogado de la Guánica Centrale, en cuanto a ese último extremo, declaró: ''que el Sr. Vélez usaba el ferrocarril con un loril para ir y venir de la propiedad al pueblo de Añasco, y le consta que transportaba por ese loril provisiones o mercancías, algunos efectos.'' Otros testigos declararon, pero no creemos necesario referirnos a sus dichos. Las declaraciones del demandante Vélez y del testigo Green dan una idea clara del caso.

Habiendo, pues, en consideración las alegaciones y las pruebas, opinamos que estuvo enteramente justificada la corte de distrito al declarar sin lugar la demanda. Por lo menos es necesario concluir como concluyó dicha corte que es de perfecta aplicación la doctrina de *estoppel*.

Esta cuestión fué ampliamente estudiada por esta Corte Suprema en el caso de *Torres et al.*, v. *Plazuela Sugar Co.*, 24 D. P .R. 479. Allí se llegó a la conclusión de que no era aplicable tal doctrina porque se trataba de una empresa privada y porque el demandante no había recibido compensación o beneficio alguno, estableciéndose la siguiente jurisprudencia: ''Cuando no ha habido causa legal o consideración para la existencia dé una servidumbre de paso, ni el dueño del predio sirviente ha obtenido beneficio alguno, aún cuando haya prestado su consentimiento para ello, tal consentimiento no implica que haya renunciado para siempre su completo dominio.'' Y aquí se otorgó al dueño de las tierras una compensación a cambio del permiso que daba para la instalación de la vía y la construcción del puente, compensación de la cual se ha beneficiado el dicho dueño.

El elemento tiempo debe ser también considerado en este caso, así como el carácter permanente de la obra construída.

Desde hace más de diez años las vías y el puente de que se trata se encuentran en el lugar que hoy ocupan, y un puente que según el mismo demandante Vélez Gaztambide tiene de sesenta a setenta metros, cuyo sitio fué escogido por el ingeniero como el apropiado para que el río en sus crecientes no lo destruyera como sucedió con el que se había levantado anteriormente, en lugar distinto, revela que se trataba no de una obra meramente provisional sino de carácter permanente.

En cuanto al pronunciamiento de la sentencia relativo a las costas y honorarios de abogados, opinamos que debe revocarse.  Este es un asunto dudoso, sobre todo después de la jurisprudencia sentada en el repetido caso de Torres v. Plazuela, y la demanda aquí se interpuso meses después de establecida dicha jurisprudencia.

La sentencia debe dictarse sin especial condenación de costas, y siendo esto así, cae por su base la resolución final ordenando a los demandantes a pagar a los abogados de los demandados, en junto, la suma de ciento sesenta pesos.

Por virtud de lo expuesto debe confirmarse la sentencia apelada con excepción de su pronunciamiento relativo a las costas y honorarios de abogado, ordenándose que cada parte pague sus costas respectivas y revocarse la resolución aprobatoria de los memorándums de costas de los demandados.

*Confirmada la sentencia apelada con excepción de su pronunciamiento relativo a las costas y honorarios de abogado, ordenándose que cada parte pague sus costas respectivas y revocada la resolución aprobatoria de los memorándums de costas de los demandados.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.