Colón, Demandante y Apelante, *v.* Plazuela Sugar Company, Demandada y Apelada.

Apelación procedente de la Corte de Distrito de Arecibo en pleito sobre negatoria de servidumbre.

No. 2758.—Resuelto en diciembre 23, 1922.

Servidumbre de Vía—Título Suficiente.—Un mero permiso verbal otorgado por el dueño de una finca a los representantes de una central azucarera para que

ésta tienda sobre las tierras de la finca las vías de un ferrocarril privado destinado a la conducción de cañas dulces, sin que mediara precio, ni se fijara tiempo, ni se establecieran condiciones, no es bastante para concluir que quedó constituída a favor de la central una servidumbre permanente de vía sobre la finca en cuestión.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. R. Agrait Aldea.*

Abogado de la apelada: *Sr. H. Miranda.*

EL JUEZ PRESIDENTE SR. DEL TORO, emitió la opinión del tribunal.

Se ejercita en este pleito la acción negatoria de servidumbre. La demandante alegó, en resumen, que es dueña de cierta finca rústica que describe, situada en el barrio del Islote, término municipal de Arecibo, con su título inscrito en el registro, libre de gravámenes. Y alegó, además, que la demandada, dueña de una central azucarera, instaló y mantiene una vía fija, para el funcionamiento de un ferrocarril privado, sobre la finca de la demandante, sin la autorización de ésta, habiendo requerido la demandante a la demandada para que cese el funcionamiento del dicho ferrocarril.

Contestó la demandada negando los hechos de la demanda y alegando como materia nueva, en resumen, que Jesús de León, de quien hubo la finca la demandante, constituyó a favor de la demandada una servidumbre de paso de vía, y que la demandante al adquirir la finca en 1911 conocía la existencia de dicha servidumbre, sin que jamás hiciera gestión alguna para el levantamiento de la vía.

Fué el pleito a juicio. Se practicó la prueba y la corte, a virtud del examen de los hechos y la ley, contenido en una larga opinión, concluyó que la demandante al adquirir la finca descrita en la demanda, lo hizo con una servidumbre de paso ferroviaria clara y aparente a favor de la Plazuela Sugar Company, constituída por el anterior dueño de la finca, y dictó sentencia declarando la demanda sin lugar, sin especial condenación de costas.

No conforme la demandante estableció el presente recurso

de apelación,. señalando en su alegato la comisión de dos erro-
res, a saber:

"I. La Corte de Distrito de Arecibo cometió manifiesto error
al declarar sin lugar la demanda y sostener: (*a*) que una servi-
dumbre fué constituída por los anteriores dueños de la finca de la
demandante a favor de Plazuela Sugar Company; (*b*) que la de-
mandante está obligada a respetar y cumplir como un gravamen
sobre su finca, la licencia verbal concedida por los anteriores dueños
a Plazuela Sugar Company para la instalación de la vía y pase de
sus trenes.

"II. La Corte de Distrito de Arecibo cometió manifiesto error
al no admitir en la vista del juicio como contraprueba de la deman-
dante, la escritura pública de arrendamiento otorgada por Eulogia
Colón Alvarez y Basilio Reyes, que fué ofrecida como tal evidencia."

Son hechos absolutamente probados que la demandante
adquirió la finca de que se trata libre de gravámenes según su
título que así se inscribió y figura inscrito en el registro; que
la demandada es dueña de un ferrocarril privado que usa
para la conducción de cañas dulces y que vías de ese ferroca-
rril se tendieron sobre la finca de la demandante con el con-
sentimiento verbal de su anterior dueño allá por el año de
1906 y desde entonces han sido usadas por la demandad i.

La cuestión fundamental a estudiar y a resolver, es, pues,
la de si a virtud del permiso otorgado por el anterior dueño
de la finca, quedó constituída sobre ella una servidumbre a
favor de la demandada que la demandante esté obligada a
respetar.

Probado su derecho dominical, libre de gravámenes, por
la demandante, correspondía demostrar a la demandada la
existencia de su título. Para ello sólo aportó prueba testi-
fical. Sus primeros testigos fueron Juan de León y su es-
posa María, los antiguos dueños de la finca de quienes trae
causa directa e inmediata la demandante. Juan de León, en
lo pertinente, dijo:

"P. ¿Quién dió el consentimiento para que esa vía fuera empo-
trada sobre esa finca?—R. Yo di el consentimiento. * * *.

"P. ¿Quién fué a solicitar el consentimiento?—R. Basilio Reyes y Julio Rodríguez.

"P. ¿Quién es Julio Rodríguez?—R. El ingeniero que tenía a cargo tender la vía de la finca.

"P. ¿Quién mandaba a ese ingeniero?—R. La Hacienda. * * *

"P. ¿A cambio de qué dió permiso para esa vía?—R. Dí ese paso porque entonces lo único que tenía mercado y se podía vender y allí no había por donde sacarlo, la caña de azúcar, y aquella finca no valía ese dinero que vale hoy, porque estaba hecha pochales, no se sembraba más que frutos menores, y no reportaba nada, y para poder sembrar cañas tenía uno que buscar por donde sacarlas, y por eso dí el consentimiento a la vía.

"P. ¿Dió el consentimiento para tener un medio de sacar los frutos de la finca?—R. Sí, señor. * * *

"P. ¿Estaba Eulogia Colón presente cuando fué usted a hablar con Tomás Boneta de que usted había dado el paso de la vía sobre la finca?—R. Estaba ella allí, estaba presente. * * *

"P. ¿Esa vía se ve claramente atravesar la finca?—R. Sí, señor. * * * "

La esposa, María de León, en lo pertinente, expresó:

"P. ¿Sobre esa finca pasa alguna vía férrea de la Central Plazuela?—R. Pasa una vía.

"P. ¿Qué tiempo hace?—R. Como diez y seis años hace. * * *

"P. ¿Usted recuerda si en alguna ocasión fueron a pedirle a usted y a Jesús de León, a ustedes, permiso para poner esa vía?—R. Sí, señor. * * *

"P. ¿Dieron el consentimiento?—R. Sí, señor. * * *

"P. ¿Usted estuvo conforme con que se pusiera la vía?—R. Sí, señor. * * *

"P. ¿Vió si los trenes pasaban después por esa vía?—R. Sí, señor.

"P. ¿Cuántos años más o menos estuvo allí?—R. Hace ocho años que salimos de la finca."

Declararon también Julio Rodríguez y Basilio Reyes, o sea, las personas que en nombre de la demandada solicitaron y obtuvieron el permiso. El primero depuso, en lo pertinente, así:

"P. ¿En alguna ocasión ha tenido que ver algo con Jesús de

León y su esposa?—R. Cuando fuimos a pedirle autorización para el paso de la vía por su finca.

"P. ¿Ha tenido interrupción alguna el tráfico de trenes a través de esa vía puesta sobre la finca de Jesús de León?—R. Nunca.

"P. ¿Desde cuándo?—R.—La vía se empezó a construir en 1905 y se terminó en 1906, que fué cuando empezaron a funcionar los trenes. * * * "

Basilio Reyes fué interrogado más extensamente. También en lo pertinente, dijo:

"A preguntas del Hon. Juez, declaró:—P. ¿Bajo qué carácter fué a solicitar de los esposos de León la concesión de la vía?—Plazuela me comisionó para recoger no solamente el paso de esa vía sino de todos los propietarios del barrio.—P. ¿En beneficio de quién?—De Plazuela Sugar Co. y de nosotros los agricultores.—P. ¿El convenio ese lo hicieron en qué forma, el de pedir el paso de la vía por la finca?—R. Lo pedimos porque era una cosa favorable para el barrio. —P. ¿En qué forma hicieron constar la concesión?—Lo pedimos y nos autorizaron y dijeron que podíamos pasar la vía.—P. ¿Fué verbalmente?—Sí, señor.—P. ¿No hicieron constar nada por escrito?—Me parece que no.—P. ¿Con quién habló?—Con Jesús de León y con la señora, y Julio Rodríguez que también iba conmigo.—P. ¿Ese contrato se hizo con algún beneficio a favor de ellos, si medió precio?— Por lo presente no medió ninguno allí.—P. ¿No exigieron algo?—No exigieron nada.—P. De manera, ¿en qué forma cedieron, por cuánto tiempo?—No se estipuló tiempo, y como no había vías de comunicación era un bien para todos.—P. Quisiera que fuera más explícito respecto a la concesión. Recordar lo que le dijo a ellos y lo que ellos aceptaron.—Nosotros le dijimos que la vía era favorable para todos, a las propiedades allí, y dimos explicación respecto al favor que nos podían hacer.—P. ¿Y lo que dijeron ellos?—El paso, que dejara pasar la vía por la finca.—P. ¿Que dejaran tender la vía para pasar? —Sí, señor; y ellos cedieron.—P. ¿Cómo contestaron ellos?—Que estaban dispuestos a dejar que pusieran la vía por la finca.—P. ¿No hubo pacto de tiempo?—No, señor; después de haber hablado respecto a eso, del favor que ocasionaba la vía, nos dijeron que estaban dispuestos a dejar que la pusieran.—P. ¿Ni por parte de Uds. ni por parte de ellos hubo señalamiento de plazo, de tiempo?—No, señor; no recuerdo. P. ¿Fué limitado o ilimitado?—No se limitó tiempo.— P. ¿Y no se volvió a hablar más nunca?—No, señor.—P. ¿Ellos no

hicieron reclamación?—Que yo sepa; no sé si a Plazuela le hicieron alguna.—P. ¿Y antes de ésta no ha habido reclamación de nadie?— Ahora.—P. ¿Antes de ésta?—Antes de ésta no había ninguna.—P. ¿Y siguen pasando por allí? — Sí, señor. — P. ¿Todos? — Sí, señor, todos. — P. ¿Todos los de esa parte? —Todos los propietarios. — P. ¿Las vías siguen puestas?—Sí, señor.—P. ¿Y los trenes circulan? —Sí, señor.

"A preguntas del abogado Sr. Miranda, declaró:

"P. ¿Recuerda si se discutió algo sobre el beneficio que le reportaría a Jesús de León el mandar las cañas por esa vía?—Ya lo creo que le reportaba.—P. ¿Se habló de que le reportaba beneficio a él?— Sí, señor.—P. ¿El antes no había sembrado cañas?—No, señor.—P. ¿Y sembró después?—Sí, señor.—P. ¿Y por dónde las conducía?— Por esa misma vía."

Los testigos Maximino Felicie y José R. Roberts declararon sobre la existencia contínua de la vía usada por el ferrocarril desde 1906, el primero, y el segundo sobre el hecho de no haber establecido Eulogia Colón reclamación alguna con excepción de este pleito, durante el período de cinco años que hace que es administrador de la central de la demandada.

Esa fué toda la prueba de la parte demandada. Aceptando como cierto lo dicho por los testigos, ¿puede concluirse que la demandada demostró su derecho para continuar disfrutando de la vía tendida sobre la finca de la demandante, contra la voluntad de ésta? ¿Probó la demandada la existencia de la servidumbre negada por la demandante?

Todos los hechos de este caso ocurrieron bajo el imperio del Código Civil Revisado. Según dicho cuerpo legal, la servidumbre es un gravamen impuesto sobre un inmueble en beneficio de otro perteneciente a distinto dueño. Pueden las servidumbres ser continuas, discontinuas, aparentes y no aparentes. Las continuas y aparentes se adquieren en virtud de título, o por prescripción de veinte años. Las continuas no aparentes y las discontinuas, sean o no aparentes, sólo podrán adquirirse en virtud de título.

No es necesario entrar a considerar si el juez de distrito se equivocó o no en la calificación de la servidumbre en este caso. No hay cuestión de prescripción. Aceptando que la vía se construyera en 1905, a la fecha de la demanda no habían transcurrido los veinte años exigidos por la ley. Sólo, pues, probando un título, quedaría demostrada la existencia de la servidumbre de que se trata.

Estamos conformes en que no es de absoluta necesidad que el contrato sea escrito. Aunque es lo propio y lo corriente que por escrito se celebren contratos de esta naturaleza, que son inscribibles y se inscriben generalmente en el registro, aceptamos que puedan celebrarse verbalmente y probarse por evidencia testifical, siendo dicha evidencia, desde luego, clara, precisa, completa, fuerte.

A nuestro juicio demuestra la prueba que la demandada en el año de 1905, por medio de sus representantes, se acercó a los esposos de León, dueños de una finca rústica, y exponiéndoles las ventajas que derivarían de la construcción de un ferrocarril que la demandada proyectaba construir por el barrio en que la finca estaba situada, para dedicarlo al transporte de cañas dulces, obtuvieron su permiso para tender parte de las vías del ferrocarril por la finca. No medió precio. No se fijó tiempo. Ni siquiera se habló de tiempo. Las vías se tendieron y el ferrocarril comenzó a funcionar sin oposición de los esposos de León. En niguna ocasión éstos expresaron la extensión del permiso concedido y cuando seis años después vendieron la finca al actual dueño, la demandante, lo hicieron consignando en el título que la finca vendida estaba libre de gravámenes. La demandante entró así en el dominio de la finca, existiendo prueba tendente a demostrar que en 1913 expresó su inconformidad con la existencia de la vía. Cierta escritura de arrendamiento en la que parece que constaba algo sobre la actitud de la demandante en relación con la vía, no fué admitida como prueba por la corte.

De todos modos, para la resolución del problema jurídico envuelto en cuanto al conocimiento y actos de la demandante podría partirse de la siguiente base: la demandante sabía que existía la vía de ferrocarril privado construída con permiso del dueño anterior de la finca desde 1905; dicho dueño, al venderle, le aseguró que no pesaba gravamen alguno sobre la finca; así aparecía entonces y aparece en la actualidad del registro.    Entró en posesión y toleró la vía hasta que estableció este pleito negando la servidumbre y pidiendo a la corte que ordenara el levantamiento de la vía, ya que la demandada se negaba a hacerlo voluntariamente.

Siendo ese el resultado de la prueba, es claramente errónea la conclusión a que llegó la corte de distrito para basar su sentencia.    Ante la corte llevó la parte demandada a la persona con quien dijo haber contratado.    Tuvo la oportunidad de interrogarla ampliamente sobre todas las condiciones del contrato y no lo hizo.    Simplemente probó que dicha persona le había permitido la instalación de la vía a través de su finca.    No se trata de un ferrocarril público o cuasi público, sino enteramente privado.    Una servidumbre de vía implica generalmente la privación por parte del dueño de la finca que la soporta del uso del terreno ocupado.    Una vía de un ferrocarril de la naturaleza del de la demandada puede instalarse y se instala a veces por una cosecha, por varias cosechas, pero no lleva envuelta necesariamente la idea de permanencia.

Presentó también la demandada como testigos suyos a sus propios agentes.    Cuando el último declaraba y terminó de responder a las preguntas vagas, imprecisas, del abogado de la demandada, el juez quiso investigar más a fondo y dejamos transcritas las manifestaciones que hizo.    Nada se habló al concederse el permiso del tiempo que había que durar.    No medió precio, ni ninguna otra compensación específica.    Sólo se aduce como causa el probable aumento del valor de la finca al tener la oportunidad de cultivar cañas y conducir a la cen-

tral de la demandada sus productos. Una servidumbre de vía, que es uno de los gravámenes más fuertes que pueden imponerse a una propiedad, no se constituye de tal modo.

La doctrina establecida en el caso de *Torres et al. v. Plazuela Sugar Co.*, 24 D. P. R. 479, es perfectamente aplicable. La demandada no sólo dejó de probar un verdadero título a la servidumbre adquirido del antiguo dueño, sino que tampoco hubiera podido alegar en contra suya la teoría del impedimento en equidad (*equitable estoppel*). Los hechos en este caso son distintos de los que sirvieron de base a nuestra decisión en el de *V. Gaztambide et al. v. Guánica Centrale*, 26 D. P. R. 795.

Resumiendo Cyc. la jurisprudencia americana sobre la materia, se expresa así:

"Una mera licencia, que no es más que un privilegio personal, puede ser revocada a voluntad del que la concedió. y el hecho de que la licencia fuera otorgada mediante instrumento escrito, o aun mediante escritura, no afecta a la regla de revocabilidad a opción del que la concede.

"En un número de Estados cuando el tenedor de la licencia ha actuado bajo la facultad en ella conferida y ha incurrido en gastos para llevar a cabo su objeto, ya haciendo mejoras de valor o en alguna otra forma, se considera en equidad la licencia como un contrato consumado cuya revocación no se permitirá, y aquélla se tiene sustancialmente como una servidumbre cuya revocación sería en fraude del tenedor. Pero en principio estos casos pueden sostenerse sólo sobre la base de que la llamada licencia era algo más que una mera licencia. En muchos casos la licencia está relacionada con una concesión, y entonces la parte que la ha concedido generalmente no puede revocarla en tal forma que destruya la concesión de que era un incidente. En otros casos no existía una mera licencia sino un contrato verbal para la concesión de una servidumbre, seguido de mejoras permanentes y materiales hechas bajo la fe del convenio, lo cual en equidad se considera como una ejecución parcial suficiente para excluir el caso del estatuto de fraudes, y algunos casos se basan abiertamente en estos fundamentos. Sin embargo, de acuerdo con el mejor criterio, cuando nada más aparece que una

mera licencia verbal la misma es revocable a voluntad del que la concedió, cualesquiera que sean los gastos que haya hecho el tenedor, siempre que dicho tenedor haya tenido aviso y oportunidad razonables para quitar sus instalaciones y mejoras. Sostener lo contrario sería pasar por encima del estatuto de fraudes y convertir una licencia otorgada en un derecho real, lo cual equivaldría a ir mucho más lejos que jamás se fué en equidad bajo la doctrina de ejecución parcial; ni tampoco envuelve el caso cuestión alguna de *estoppel in pais* contra el que concedió la licencia ni está éste sujeto a responsabilidad en una acción por daños.

"De acuerdo con el peso de las autoridades el hecho de que se pague una causa o consideración por la licencia no la hace irrevocable, aunque hay algunas decisiones en sentido contrario." 25 Cyc., págs. 645–649.

Y si ello es así en cuanto al primitivo dueño, con mucha mayor razón lo es con respecto al actual con quien no trató la demandada, que adquirió la finca libre de gravámenes y que meramente toleró la existencia de la vía hasta que expresó su voluntad en contrario. Los actos meramente tolerados, no afectan a la posesión. Artículo 446 del Código Civil Revisado.

No es necesario considerar el segundo de los errores señalados. Debe revocarse la sentencia apelada y declararse con lugar la demanda, pero concediéndose un término razonable que se fija en seis meses, contado a partir de esta fecha, para el levantamiento de la vía, con las costas a la parte demandada.

*Revocada la sentencia apelada, con las costas a la demandada.*

Jueces concurrentes: Sres. Asociados Aldrey y Hutchison.

Los Jueces Asociados Sres. Wolf y Franco Soto no intervinieron en la resolución de este caso.