José Martínez Rodríguez, demandante y apelante, *v.* Central Cambalache, Inc., demandada y apelada.

No. 5987.—*Sometido:* Noviembre 14, 1933. *Resuelto:* Marzo 8, 1935.

*Leopoldo Mercader,* abogado del apelante; *Félix Santoni,* abogado de la apelada.

El Juez Asociado Señor Aldrey, emitió la opinión del tribunal.

 Este recurso de apelación lo interpuso el demandante contra la sentencia que declaró sin lugar su demanda, en la que alega ser dueño de ciertas fincas rústicas y que no tienen servidumbre de paso a favor de la demandada, por lo que solicitó del tribunal ordenase a la Central Cambalache que levante la vía férrea que tiene en esos terrenos.

La demanda se refirió a tres fincas, una de 7 cuerdas de terreno, otra de 1.56 y la tercera de 4 cuerdas pero despúes de contestada la demanda solicitó el demandante que la corte lo tuviese por desistido de su reclamación en cuanto a la finca de 7 cuerdas y, después de empezado el juicio en este caso, la corte de distrito con la conformidad de la demandada accedió al desistimiento interesado. Por esto la demanda quedó limitada a dos fincas rústicas, una de 1.56 y otra de 4 cuerdas, radicadas ambas en el barrio de Sabana Hoyos del término municipal de Arecibo.

La demandada es la corporación privada Central Cambalache, la que en su contestación a la demanda hizo una negación general de los hechos de la misma y adujo varias defensas.

La demanda fué presentada en mayo de 1930 y el juicio fué celebrado en marzo de 1931. Para probar el demandante su título a las dos fincas presentó en el juicio dos resoluciones judiciales dictadas el 15 de abril de 1930 en las cuales se declara justificada por el demandante su posesión en las fincas de 1.56 y de 4 cuerdas por haber comprado la primera el 1929 a Remigio Martínez Badía, quien la había comprado hacía más de veinte años a Plácido Sanz y José Dolores Varela, y las 4 cuerdas por haberlas comprado al mismo Remigio Martínez Badía y éste a Epifania Rodríguez en 1920. Esos títulos están inscritos en el registro de la propiedad y fueron admitidos en el juicio sin oposición de la parte demandada y sin que ésta presentara evidencia para contradecirlos. A pesar de esa prueba la corte inferior estimó que Remigio Martínez Badía era el verdadero dueño de las dos fincas porque habiendo sido él empleado de la demandada cuando en 1910 fué construída la vía férrea y habiendo consentido en que pasara por esas dos fincas, hubiera estado impedido de hacer reclamación alguna. Creemos que esa suposición no tiene base en prueba alguna y que no tiene razón de ser si esas fincas no están sujetas a servidumbre de paso de la vía férrea.

El hecho de que la vía férrea pasa por esas dos fincas está reconocido por la demandada cuando refiriéndose a ellas en su contestación a la demanda dice ''La vía férrea existente en las tierras a que se refiere la demanda,'' y está declarado por la corte sentenciadora al consignar en la opinión que escribió para fundar su sentencia que ''el juzgador tiene que concluir que efectivamente los rieles del ferrocarril de la demandada atraviesan esos terrenos.'' Sentado lo que precede veamos si la demandada tiene algún título o derecho para pasar su ferrocarril por esas dos fincas del demandante.

En su contestación a la demanda alegó la Central Cambalache que su ferrocarril pasa por las dos fincas del demandante parte por derecho de servidumbre y otra parte por haber comprado una faja de terreno de 434 metros 10 centímetros cuadrados a Plácido Sanz quien la segregó de una finca mayor. Para justificar el último particular presentó en el juicio la demandada una escritura pública de 1912 por la cual Patricio Sanz Cintrón y su esposa, como dueños de una finca de 33 centésimas 70 milésimas de cuerda vendieron a la Central Cambalache una faja de terreno de 72 metros 35 centímetros de largo por 6 metros de ancho, o sea un total de 434 metros 10 centímetros cuadrados, que atraviesa la finca de donde se segrega de norte a sur, por el interior de ella puesto que la finca principal es colindante con esa faja al este y al oeste.

Cuando ese documento fué presentado en el juicio se opuso el demandante a su admisión porque no se relaciona en ninguna forma con las fincas descritas en la demanda pero la corte admitió tal documento y como fundamento en su sentencia dice que la finca de 1.56 cuerda formaba antiguamente parte de otra de 20 cuerdas de Gregoria Serrano y que si esto no es así hay que convenir en que de ella fué que la demandada compró la faja de 434 metros 10 centímetros cuadrados a Plácido Sanz cuando éste adquirió de Higinio Bonet que es uno de los que transfirieron a Martínez Badía.

Las colindancias de la finca de donde se segregó esa faja de terreno son distintas de las que tienen las dos fincas del demandante, excepto por el oeste donde ambas tienen como colindante a Agustín Serrano pero no a Josefa Candelario que también es colindante por el oeste de la finca de 1.56; sin que el hecho de que esa finca de 1.56 y la de Plácido Sanz de donde se segregó la faja comprada por la Central pertenecieran antes a Higinio Bonet sea suficiente para concluir que la faja comprada está en la finca de 1.56.

En cuanto a la finca de 4 cuerdas declaró la corte inferior que procede de otra finca de 20 cuerdas de Gregoria Serrano porque Remigio Martínez Badía la compró a Epifania Rodríguez quien la adquirió de Gregoria Serrano en 1919. Aunque la finca de 4 cuerdas y la de Gregoria Serrano de 20 cuerdas sólo tienen los nombres de dos personas como colindantes comunes, aunque por distintos rumbos, pues Inocencia Picón que es una de las colindantes por el norte de la finca de 4 cuerdas aparece al sur de la de 20 cuerdas, y Juan Serrano Molleno que está al este de la finca pequeña se halla al este en la mayor, por lo que no puede colocarse la del demandante dentro de la de Gregoria Serrano, podemos admitir que aquélla procede de la otra porque eso no tiene importancia para la cuestión de derecho que surge en este caso según veremos más adelante.

Gregoria Serrano como dueña de una finca de 20 cuerdas suscribió y juró ante un notario en 1910 un documento en el cual dice que constituye servidumbre de paso a perpetuidad y gratuitamente sobre esa finca de Sabana Hoyos a favor de la Central Cambalache para atravesarla con un ferrocarril. Ese documento está escrito en maquinilla con espacios en blanco que han sido manuscritos con letra distinta de la de Gregoria Serrano; y aquella parte en que dice en maquinilla que ha sido pagado precio por la servidumbre ha sido tachada y se ha escrito "gratuitamente".

La corte inferior dice en su opinión que si bien en ese documento aparece que la concesión fué gratuita sin embargo

se demostró que la demandada le pagó a Gregoria Serrano $130 como indemnización. Esta afirmación de la corte se funda en que algunos testigos de la demandada declararon y de sus libros aparece que la Central pagó a Gregoria Serrano $130 como indemnización por los frutos que había que destruirle para colocar la vía en sus terrenos y por el gasto de trasladar su casa a otro sitio por estar enclavada en el lugar que había de ocupar la vía férrea, pero esa prueba no justifica la conclusión de que tal cantidad se le dió por el derecho de servidumbre que había concedido gratuitamente. Ni podía la demandada variar los términos del documento firmado por Gregoria Serrano. *Sarria* v. *Álvarez,* 38 D.P.R. 906: *Villanueva* v. *Suárez,* 41 D.P.R. 47. Esa evidencia no prueba la conclusión de la corte, por lo que hay que seguir considerando dicho documento como una concesión gratuita de servidumbre, o sea sin compensación. Tal clase de concesión no está inscrita en el registro de la propiedad ni podía ser inscrita por no contener los requisitos exigidos por la Ley Hipotecaria, por lo que no perjudica a tercera persona.

La llamada servidumbre gratuita de paso que Gregoria Serrano concedió a la demandada no creó derecho de servidumbre a favor de la Central Cambalache por carecer de compensación, por lo que resulta un mero permiso o tolerancia que no afecta a la posesión según el artículo 446 del Código Civil, y que es revocable porque tal consentimiento no significa que el dueño de la finca haya renunciado para siempre su completo dominio. *Torres* v. *Plazuela Sugar Co.,* 24 D.P.R. 479: *Colón* v. *Plazuela Sugar Co.,* 31 D.P.R. 314, La doctrina del caso de *Gaztambide* v. *Guánica Centrale,* 26 D.P.R. 795, que la corte inferior cita en su opinión referente a impedimento en equidad para negar la servidumbre, no es de aplicación al caso presente porque en éste se trata de un ferrocarril de una corporación privada para uso exclusivo suyo, mientras que en aquel caso el ferrocarril era de servicio público. *Torres* v. *Plazuela,* supra.

■ Como la demandada no ha presentado otra prueba de servidumbre que la consignada en el documento privado uni-lateral que firmó Gregoria Serrano, que no es constitutivo de servidumbre, veamos si ha adquirido tal derecho por pres-cripción por tener puesta su vía en los terrenos del deman-dante por más de veinte años.

Aunque la existencia de la vía férrea de la demandada en los terrenos del demandante demuestre la existencia de una servidumbre aparente de paso no por esto puede adquirirse esa servidumbre por prescripción, ya que siendo discontinua por usarse a intervalos más o menos largos y depender de actos del hombre, tiene que ser constituída necesariamente por título según precepto terminante del artículo 475 del Có-digo Civil (Edición de 1930), según el cual las servidumbres discontinuas, sean o no aparentes, sólo podrán adquirirse por título. Esta cuestión fué resuelta en el caso de *González* v. *Plazuela Sugar Co.*, 42 D.P.R. 701, en el que declaramos en la opinión escrita por el Juez Sr. Texidor, que ha fallecido, que como la servidumbre de paso de vía tiene, por su uso, el carácter de discontinua siempre, no puede haber duda de que para su adquisición se requiere título escrito, ya que al definir el artículo 539 de nuestro Código Civil (468 de la Edición de 1930) las clases de servidumbres, dice que son continuas aqué-llas cuyo uso es o puede ser incesante sin la intervención de ningún hecho del hombre; y que son discontinuas las que se usan a intervalos más o menos largos y dependen de actos del hombre. Y también se dijo: "En cuanto una servidum-bre se usa a intervalos más o menos largos y dependa de actos del hombre, ya no cabe clasificarla más que como discon-tinua y así con la de vía para paso de un tren que sirve las cosechas de determinado fundo." Y se dijo asimismo: "La servidumbre discontinua, sea o no aparente, no puede ad-quirirse más que en virtud de título (artículo 546 Código Civil) y de que el título ha de ser constitutivo de la servi-dumbre, no deja duda alguna la lectura del artículo 547 del

Código Civil, así como de que no puede una servidumbre de esa clase adquirirse por prescripción; algo perfectamente lógico, ya que los actos de uso, por no ser constantes, y tener un principio y un fin que se reproducen sin perfecta continuidad, no pueden crear prescripción.'' El Sr. Manresa en sus Comentarios al Código Civil, tomo 4, página 577; Scaevola en el tomo 10, página 157 y Morell sobre Legislación Hipotecaria, tomo 1, página 341, reconocen que la servidumbre de paso es discontinua. En cuanto a que no puede adquirirse por prescripción sino por título lo ha resuelto también este tribunal en el caso de *Nadal* v. *Muratti,* 34 D.P.R. 251, en el que tratándose de haber sido adquirida una servidumbre por prescripción, dijimos lo siguiente: ''El año de 1890 es de importancia decisiva porque con él comenzó a regir el Código Civil y desde su vigencia la servidumbre de que se trata sólo pudo adquirirse a virtud de título y aquí ni siquiera se ha invocado ese medio de adquisición.''

Por lo expuesto y no habiendo probado la demandada que la faja de terreno que compró y por la que pasa la vía férrea está comprendida dentro de la finca de 1 cuerda 56 céntimos y no habiéndose probado título alguno válido de servidumbre en la finca de Gregoria Serrano de la cual se dice es segregación la de 4 cuerdas del demandante, *la sentencia apelada debe ser revocada y dictarse otra declarando con lugar la demanda y condenando a la demandada a que dentro del término de seis meses contados desde la fecha de esta sentencia levante la vía férrea que tiene en las dos fincas del demandante, sin especial condena de costas.*

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA

Partiendo de la base de los hechos expuestos en la opinión de la mayoría, manifestamos nuestra inconformidad con las conclusiones que en dicha opinión se establecen con respecto al carácter de la servidumbre. Ordinariamente la servidumbre de paso es discontinua y debe ser adquirida en virtud de título. Sobre este punto no hay discrepancia en la jurispru-

dencia. Sin embargo, la servidumbre corriente de paso que los tribunales y comentaristas califican de discontinua no puede confundirse con esta servidumbre de vía férrea que es estable, permanente, exclusiva y ostensible, y reúne todas las características de una servidumbre continua y aparente. La vía trazada y preparada para el paso de los trenes, con sus rieles tendidos en líneas paralelas, ocupa continuamente un espacio de terreno que no puede utilizarse para otra cosa que no sea el funcionamiento del ferrocarril. El uso de ese terreno tiene, por lo tanto, carácter de continuidad. Esta corte, en *Torres* v. *Plazuela,* 24 D.P.R. 479, expresó sus dudas en cuanto a la naturaleza de una servidumbre exactamente igual a la que en este pleito se discute. Hablando por labios de su Juez Asociado Sr. Wolf, dijo entonces este tribunal en el referido caso:

"Hay alguna duda respecto a la naturaleza de la servidumbre en este caso. Generalmente una servidumbre de paso es una servidumbre no aparente y discontinua. Si esto es así los apelantes están en lo correcto en alegar que de acuerdo con los artículos 546 y 547 del Código Civil tal derecho sólo puede ser adquirido mediante título escrito. Por el contrario si debido a la colocación de la vía sobre el terreno la servidumbre se convierte en aparente, entonces puede haber gran duda de si es necesario el documento escrito. Scaevola, Tomo X, página 238. De todos modos era necesario para la apelada probar un título de alguna clase. Discutiremos brevemente si el apelado, dejando a un lado todo principio de *estoppel,* adquirió un título en este caso."

En el caso de *González* v. *Plazuela Sugar Co.,* 42 D.P.R. 701, el Juez Texidor, hablando a nombre del tribunal, se hace eco de las dudas expresadas en la decisión anteriormente citada y añade:

"Personalmente, el Juez Asociado ponente en este caso va un poco más allá, y entiende que esta servidumbre de paso de vía tiene, por su uso, el carácter de discontinua siempre. Y en este caso no cabe duda alguna de que su adquisición requiere título escrito. El artículo 539 del Código Civil de Puerto Rico, al definir las clases de servidumbres, dice lo que son las continuas y discontinuas:

"'Continuas son aquéllas cuyo uso es o puede ser incesante sin la intervención de ningún hecho del hombre.

"'Discontinuas son las que se usan a intervalos más o menos largos y dependen de actos del hombre.'

"En cuanto una servidumbre se *use a intervalos más o menos largos, y dependa de actos del hombre,* ya no cabe clasificarla más que como discontinua y así con la de vía para paso de un tren que sirve las cosechas de determinado fundo.

"La servidumbre discontinua, sea o no aparente, no puede adquirirse más que en virtud de título (Art. 546 Código Civil) y de que el título ha de ser *constitutivo* de la servidumbre, no deja duda alguna la lectura del artículo 547 del Código Civil, así como de que no puede una servidumbre de esa clase adquirirse por prescripción; algo perfectamente lógico, ya que los actos de uso, por no ser constantes, y tener un principio y un fin que se reproducen sin perfecta continuidad, no pueden crear prescripción."

Aún cuando el Juez Texidor aparece emitiendo una opinión personal, puede decirse que esta corte aceptó su criterio, ya que el fallo dictado demuestra que mereció la aprobación unánime del tribunal. Sin embargo, en el caso de *Román* v. *Plazuela Sugar Co.,* 44 D.P.R. 52, esta Corte, refiriéndose a una vía férrea que a juicio de la demandada constituía una servidumbre adquirida por prescripción, se expresó en los siguientes términos:

"La Corte de Distrito sostuvo que la demandada había adquirido una servidumbre por prescripción. La de si una servidumbre como la alegada por la demandada puede o no adquirirse por prescripción, es una cuestión interesante. No es necesario que la resolvamos ahora. Véanse, sin embargo, los casos de Torres v. Falgorust, 37 La. Ann. 497; Torres v. Plazuela Sugar Co., 24 D.P.R. 479; 2 Morell, Legislación Hipotecaria, 666; 10 Scaevola, Comentarios al Código Civil, 260; y 4 Manresa, Comentarios al Código Civil, 599."

Se ve realmente que esta corte ha tenido serias dudas y que aún se mantiene indecisa y vacilante sobre esta importantísima cuestión, a pesar de haber aceptado el criterio personal del Juez Texidor. Y no nos extrañan estas dudas y vacilaciones, porque en realidad la naturaleza de esta servidumbre no ha sido aún discutida con todo el detenimiento y la

amplitud necesarios para poder establecer una conclusión que sirva de precedente y que establezca de una manera definitiva el criterio de este tribunal.

Los comentaristas españoles nada dicen sobre esta servidumbre de vía férrea, que tampoco aparece considerada y discutida por el Tribunal Supremo de España. En el estado de Louisiana, donde como en Puerto Rico se cultiva la caña de azúcar y se transporta a la factoría, se ha resuelto un caso que trata directamente esta servidumbre de vía férrea sobre un terreno privado y en beneficio de una empresa privada. No es posible negar, sin embargo, la continuidad del servicio que presta el terreno ocupado por la vía y utilizado exclusivamente para el paso de los trenes. Basta aplicar los principios generales de derecho en materias de servidumbre para llegar forzosamente a la conclusión de que este servicio es continuo y de que se presta constantemente con y sin la intervención del acto del hombre. En Francia se ha sostenido, interpretando el Código de Napoleón, que la servidumbre de paso por una carretera de *macadám* sigue siendo discontinua no obstante su aparente continuidad, porque necesita, para su ejercicio, del acto del hombre. Convenimos en que el acto material de pasar tiene que ser ejecutado por una persona; pero si el servicio prestado es continuo y como en el caso que nos ocupa hay que instalar rieles y preparar una vía para que crucen las locomotoras, la servidumbre que surja con la instalación de estos aparatos por donde pasan los trenes constituye una unidad en la cual intervienen todos estos elementos que se complementan y funden en una sola estructura. La opinión emitida por la Corte Suprema de Louisiana en el caso de *Ogborn* v. *Lower Territory Refining & Mfg. Co.,* 129 La. 379, es interesante y no deja de ser curiosa. En dicho caso el juez ponente emite su criterio personal y aduce argumentos para demostrar que esta servidumbre es continua y aparente, pero agrega que la mayoría de la corte piensa de modo diferente por las razones que pasa a exponer. Al fina-

lizar su opinión la corte dice que en Francia una servidumbre de paso no deja de ser discontinua dentro de las disposiciones del código si se ejerce por medio de una carretera de *macadám* y se añade que el carácter de esta carretera es tan aparente y continuo como un ferrocarril y que por lo tanto ambas servidumbres no pueden ser distinguidas. Copiamos a continuación en toda su integridad la opinión emitida por el referido tribunal:

"El demandado está operando un tren a través de los terrenos del demandante para transportar su caña de azúcar a la factoría y la acción interpuesta trata de impedir que continúe operando su tren. El demandado alega que tiene una servidumbre de paso en los terrenos del demandante en virtud de la prescripción de diez años. Arguye el demandante que esta servidumbre es discontinua y que por lo tanto no puede prescribir. La única cuestión fundamental a discutir en este caso es si esta alegación está bien fundada o no. El autor de esta opinión cree que una servidumbre, el ejercicio de la cual necesita que se mantenga permanentemente una vía, consistente de rieles, traviesas, puentes, etc., de la cual el predio dominante tiene el uso exclusivo y el predio sirviente únicamente la carga, es continua y aparente. Así ha sido admitido por el derecho común y en opinión del juez ponente debe serlo dentro del derecho civil, porque los principios básicos de la prescripción son los mismos en los dos sistemas de ley. La mayoría de la corte piensa de otro modo, sin embargo, por las razones que a continuación se expresan:

"Art. 727, C. C.:

" 'Las servidumbres son continuas o discontinuas. Las servidumbres continuas son aquéllas cuyo uso es o puede ser continuado sin el acto del hombre. Tales son las de acueducto, desagüe, vista y otras semejantes. Las discontinuas son aquéllas que necesitan del acto del hombre para su ejercicio. Tales son las de paso, de saca de agua, de pasto, y otras semejantes.'

"Art. 766:

" 'Las servidumbres continuas no aparentes y las discontinuas, sean o no aparentes, únicamente pueden adquirirse en virtud de título. La posesión inmemorial no basta para adquirirla. Posesión inmemorial es aquélla sobre la cual ninguna persona viviente ha visto el principio y cuya existencia ha venido a conocer por información de sus mayores.'

"En el caso de Torres v. Falgorust, 37 La. Ann. 497, en que una vereda que conectaba un barrio populoso de las afueras de una ciudad con las márgenes del río, había existido y estaba abierta al público por espacio de cerca de un año a través de la finca contigua al río y que constantemente había sido utilizada por el público, esta corte resolvió que la servidumbre era discontinua y que por ende no podía adquirse por prescripción.

"Aubry & Rau, comentando los artículos que del Código de Napoleón corresponden con los citados, dicen lo siguiente:

" 'Servidumbres discontinuas son aquéllas que necesitan de la intervención del hombre para su existencia. Lo que les caracteriza es que su ejercicio no existe más allá de la actuación del hombre. Cesa inmediatamente que termina esa actuación. De esa índole es la servidumbre de paso; ésta es ejercida cada vez que el dueño del predio dominante pasa sobre el predio sirviente, y solamente durante el momento en que atraviesa. La ley cita como ejemplos adicionales las servidumbres de saca de agua y de pastos.

" 'Estas servidumbres continan siendo discontinuas no obstante el hecho de que para que se les ejerza se necesita que se realicen ciertos actos aparentes. Si se leen conjuntamente los artículos 688 y 689, se verá que el Código ha empleado dos divisiones distintas, que no deben ser confundidas, "apariencia" y "continuidad." Una servidumbre de paso que de por sí se manifiesta por un portón o postigo, o de la cual la llave ha sido entregada al dueño del predio dominante, o para la cual se han realizado obras que están a la vista— por ejemplo, un camino que atraviesa la finca contigua, un puente— no deja de seguir siendo discontinua según la clasificación hecha por el Código.' Tomo 8, pág. 118, No. 248, Servidumbres.

"De la conocida obra de Carpentier et Du Saint (tomo, Servidumbres de Paso, Nos. 56 y 57), tomamos lo siguiente:

" 'La servidumbre de paso puede ser aparente. Lo es si se manifiesta a virtud de alguna obra exterior, como por ejemplo, un portón o un camino de macadám. Mas, sin embargo, sigue siendo una servidumbre discontinua no obstante su aparente continuidad, y, toda vez que la intervención del hombre es necesaria para su ejercicio, no puede adquirirse por prescripción. (Citas.)'

"Así, pues, se verá que en Francia una servidumbre de paso es no obstante discontinua dentro del significado del artículo del Código arriba citado, si la misma se ejerce por medio de un camino de *macadám*. Un camino de esa naturaleza es tan aparente y continuo como

un ferrocarril, y, por consiguiente, a este respecto los dos no son distinguibles.''

El Juez Presidente Sr. Breaux disintió.

La Corte Suprema de Louisiana más bien que convencida parece sentirse obligada a seguir la interpretación que se ha dado en Francia a preceptos del Código de Napoleón, idénticos a los del Código Civil de Louisiana. Sus argumentos no parecen estar muy de acuerdo con el fallo pronunciado.

En *Kamer* v. *Bryant,* 46 S. W. 14, resuelto por la Corte de Apelaciones de Kentucky, se sostuvo que la servidumbre constituída por un desvío usado por el dueño del predio dominante para conducir piedra de una cantera a un ferrocarril podía adquirirse por prescripción. En este caso la corte se expresó así:

''También somos de opinión de que los apelados han adquirido el derecho de servidumbre por prescripción. El derecho para usar el desvío fué primeramente reclamado y así usado en diciembre de 1875 y fué negado por primera vez en 1894, hace cerca de diez y nueve años. El hecho de que la cantera no fuese usada desde 1889 no interrumpió la prescripción en dicho año. El derecho a usar la cantera y su dominio estuvo en litigio entre sus dueños y ni el apelante ni sus vendedores reclamaron entonces derecho alguno. Al tiempo en que el apelante compró su predio, el desvío estaba allí, y demostraba de una manera clara que se estaba usando y de que se usaba para el beneficio de la cantera del apelado. Y el apelante, que fué dueño de su predio por tres años, no formuló objeción alguna al desvío, habiéndolo hecho por primera vez cuando fracasaron las negociaciones que hizo para comprarlo. El apelante tuvo noticia de la servidumbre al tiempo de comprar la propiedad y no puede ahora discutir su existencia.''

Nuestro Código dice que son discontinuas las servidumbres que se usan a intervalos más o menos largos y dependen de actos del hombre. En nuestro sentir la servidumbre de vía no se usa a intervalos más o menos largos, sino constantemente, y no está esperando el acto del hombre para tener efectividad, puesto que el terreno ocupado por la vía se usa continuamente, con exclusión del dueño del predio que presta

el servicio, para el funcionamiento del ferrocarril. La servidumbre de acueducto no deja de ser continua por el hecho de que se cierren las llaves o se interrumpa el curso de las aguas por un acto del hombre. Esta servidumbre está considerada por nuestra jurisprudencia como continua y aparente. Refiriéndose a esta relación de continuidad dice la Corte de Cancillería de New Jersey en el caso de *Larsen* v. *Peterson*, 30 Atl. 1094:

"Mr. Gale, en la última edición de su libro (Gale, Easem. (4ª ed. inglesa 1868, páginas 87–89, párrafos 50, 52), establece la conclusión de que la pauta para apreciar la continuidad es que debe haber una alteración en la cualidad o disposición de la tenencia que se intenta adquirir y que es en su naturaleza permanente, e imprime a dicha tenencia cualidades peculiares y hace que una parte dependa en cierto grado de otra. No exige este medio de comprobar la servidumbre, aplicado al curso del agua, que ella discurra por sí misma continuamente. Lo esencial es que el aparato artificial por el cual circula el agua sea de naturaleza permanente. Con el propósito de poner de relieve esta cualidad de permanencia es que el sabio autor contrasta esta clase de servidumbres con una de paso, cuyo goce depende de la intervención material del hombre a cada instante que la utiliza. Ahora bien, lo que esta oración significa es que el gravamen de la servidumbre en el caso de una servidumbre de paso no se siente por el predio sirviente sino en el momento y cada vez que se usa. Una estructura permanente, o alteración del predio sirviente, no es un elemento necesario para tal servidumbre de paso. Y por la expresión de intervención del hombre cada vez que se usa, no se ha querido significar otra cosa que una intervención en el predio sirviente al penetrar en él según ha quedado demostrado no solamente por los derechos ordinarios de paso, sino también por tales derechos de paso con opción a tomar algo del predio sirviente, como ocurre en el caso de Polden v. Bastard, 4 Best & S. 258, L. R. 1 Q. B. 156."

Tanto Mr. Gale como la Corte de New Jersey demuestran en su razonamiento que si se hubiesen hallado en presencia de una servidumbre de vía que requiere colocación de rieles y traviesas sobre el terreno y cierta alteración en la propiedad para que puedan cruzar las locomotoras y los trenes, habrían resuelto que la misma es una servidumbre que tiene ca-

rácter de continuidad. La servidumbre de paso discontinua a que se refiere el tribunal de New Jersey es aquélla que no requiere para su uso una estructura permanente y alteración del predio que presta el servicio. Esta servidumbre de vía se hace sentir en el predio sirviente de una manera constante por medio de la vía férrea allí construída y no precisamente cada vez que se usa la servidumbre. Tampoco se interviene en el predio referido, al penetrar en él, sino que se está interviniendo continuamente, desde el instante en que se construya la vía.

Los comentaristas españoles Scaevola y Manresa convienen en que la servidumbre ordinaria de paso es discontinua, pero ¿qué dirían estos comentaristas si tuviesen que emitir su juicio acerca de esta nueva modalidad de la servidumbre de paso? A nuestro juicio sus argumentos demuestran claramente cuál sería su criterio sobre el particular. El tratadista Filippis opina que cuando el dueño del predio que usa la servidumbre construye un puente para ejercitar el paso, la servidumbre se convierte en continua y aparente y puede adquirirse por prescripción. Refiriéndose a esta opinión del comentarista italiano, dice el Sr. Manresa:

"Comentando Filippis el Código civil italiano, cuyos artículos 629 al 631 son iguales a los 537, 538 y 539 del nuestro, cree que cuando no pueda dudarse dél asentimiento a la servidumbre por parte del dueño del predio sirviente todas las servidumbres deben estimarse susceptibles de ser adquiridas por prescripción. Cita al efecto dos ejemplos. *El primero, que no vemos inconveniente en admitir, se refiere a la servidumbre de paso.* El simple hecho de pasar por la finca de otro, aunque sea desde tiempo inmemorial, no basta a establecer la servidumbre; *pero si el dueño del supuesto predio dominante construye un puente para ejercitar el paso, desde ese momento la servidumbre discontinua de paso se ha convertido en continua y aparente, y puede adquirirse por prescripción;* sin que pueda objetarse que sólo se adquirirá el derecho de tener el puente y no el derecho de pasar, porque el puente es medio exclusivamente destinado para el paso, y en el tiempo necesario para prescribir, forzosamente ha debido observar el dueño del predio sirviente que se destinaba al paso

y que se pretendía imponer una verdadera servidumbre." 4 Manresa, 556.

Manresa no tiene inconveniente en admitir el criterio de Filippis sobre la servidumbre de paso, y por lo tanto está de acuerdo en que cuando se construye un puente para ejercitar el paso, la servidumbre discontinua se convierte en continua y aparente. Y preguntamos nosotros, ¿qué diferencia existe entre una vía férrea fija y permanente por donde circulan trenes y locomotoras y la construcción de un puente para proporcionar el paso? Si el puente hace que la servidumbre adquiera el carácter de continua y aparente, ¿por qué no la vía férrea construída sobre el terreno?

Scaevola, en sus Comentarios al Código Civil, se expresa así:

"Las servidumbres aparentes llevan consigo todos los requisitos indispensables de la posesión. Reúnen la publicidad, porque el signo es la autorización de la servidumbre que equivale a aquella cualidad. Todo signo exterior de una servidumbre está indicando que allí existe ésta, y, por consiguiente, no puede menos de reputarse pública la posesión de una servidumbre de esta clase. Quien abre una ventana o construye un acueducto sobre el fundo ajeno, no cabe pensar que procede clandestinamente, porque ambos signos pueden ser vistos por el propietario de aquél; hay publicidad en el sentido que tiene esta palabra en materia de posesión.

"La permanencia del signo lleva aparejada la constancia, la continuidad del derecho. ¿Qué más continuidad puede exigirse? ¿No revela dicho signo el ejercicio de la servidumbre y la posibilidad de practicar éste siempre que se quiera? ¿Por qué no admitir la prescripción a pretexto de que por virtud de la discontinuidad se ignora si se intenta o no adquirir la posesión de la servidumbre? Si se trata de una servidumbre discontinua, claro es que su ejercicio no ha de ser continuo; ¿por qué ha de exigirse éste? Además, el mismo Código no afirma la continuidad como un principio absoluto; por el contrario, acepta la discontinuidad de hecho. Proclámalo abiertamente el art. 1944, conforme al cual, la posesión se interrumpe naturalmente cuando por cualquier causa se cesa en ella por más de un año. Ahora bien, si no obsta a la posesión la interrupción de un año o menos de un año, ¿por qué se ha de exigir la continuidad abso-

232

luta, la propiamente tal, respecto de las servidumbres?'' 10 Scaevola, 260, 261.

Así se expresan los comentaristas españoles. Como ya hemos dicho, el Tribunal Supremo de España no ha tenido oportunidad de emitir su juicio acerca de esta nueva modalidad de la servidumbre de paso, pero si se estudia esta cuestión a la luz de sus numerosas decisiones en materia de servidumbres, quizá no sería aventurado decir que su criterio no se apartaría del sostenido hasta ahora por los citados comentaristas. Para nosotros la cuestión no ofrece grandes dificultades. Basta aplicar en este caso los principios generales de derecho en materia de servidumbres para que surja la inevitable conclusión de que nos hallamos en presencia de una servidumbre de vía continua y aparente, adquirida por prescripción.

Opinamos que ha debido confirmarse la sentencia apelada. Estoy autorizado para decir que el Juez Asociado Sr. Hutchison está conforme con esta opinión.